McCoun, J.
 

 The complaint is against the defendant as chamberlain of the city of New York, charging neglect and refusal to pay the plaintiff for his services as crier of the marine court, according to a
 
 per diem
 
 allowance, on presenting to him a certificate of the clerk of that court, showing the plaintiff’s appointment as crier, and the number of days he had attended and performed the service; and it prays judgment and execution against the defendant for the amount.
 

 The objections taken by the demurrer are broad, yet specific enough to present the question, whether the defendant, as such officer of the corporation of the city New York, is liable to be sued in an action at law upon such a demand ? This question does not appear to have bee-n considered in the court below, as the decision there was placed on another ground; but it is presented in the respondent’s points, and has been discussed here, and we may, therefore, proceed to dispose of it.
 

 The office of chamberlain, as created by royal charter (Kent’s Notes on the City Charter 12), is identical with that of county treasurer. The article of the revised statutes relating to county treasurers declares, that the chamberlain shall be considered the county treasurer,
 
 *68
 
 and all the provisions of that article are made applicable to him, except where specific provisions, inconsistent therewith, are or shall be made by law. (1 R. S. 368, 370.)
 

 County treasurers are not the officers to sue or be sued concerning the affairs óf their respective counties; they are depositories of public moneys, and disbursing *agents of the county governments, acting under the orders of the board of supervisors, and, in some instances, of the courts of justice in relation to funds deposited with them by orders of the court; but they have no power to adjust claims presented against their counties, nor to determine what are, or are not, valid and subsisting demands; and to allow actions at law to be brought against them in the first instance, for the purpose of establishing debts or demands against the counties, would soon become an intolerable grievance. Nowhere in our statutes is any authority given for a resort, in that form, to the county treasury. Counties may be involved in litigation; controversies may arise between one county and another, and between a county and individuals, and it may be very proper, and indeed necessary, to have them determined by the judicial tribunals of the state, and hence it is, that provision is made by law for bringing suits by and against boards of supervisors, in the name of the board. Counties may sue and be sued, and the mode of proceeding is given. (1 R. S. 384.) It is not all claims, however, that can be the subject of such an action. Those denominated “county charges" (1 R. S. 385) are not allowed to be sued for in that way, because another mode is pointed out for having them adjusted and paid. “Accounts for county charges of every description shall be presented to the board of supervisors of the county, to be audited by them.” (1 R. S. 386, § 4.) This is an imperative direction. The board of supervisors act judicially, in auditing and allowing such accounts; upon being
 
 *69
 
 allowed, the county treasurer is to pay them. If the supervisors refuse to do their duty, or if they act improperly in such matters, the appropriate remedy is by writ of
 
 mandamus.
 
 So, if the county treasurer should improperly refuse to pay upon the allowance or order of the supervisors, the like remedy may be had against him. Have the recent acts of the legislature, under which the plaintiff claims compensation as crier, prescribed any other remedy than the one just mentioned ?
 

 The act May 14th, 1840, *concerning costs and fees, &c., has abolished criers’ fees, and substituted a
 
 per diem
 
 allowance as their compensation; such allowance to the criers of the supreme court is to be paid out of the state treasury. “Criers of other courts” (these are the words) “ shall receive, during their attendance upon the court, the same compensation as constables are by law allowed, to be audited and paid as county charges.” Of course, like other county charges, to be audited and settled in the manner above mentioned. But an alteration was made in that respect by a subsequent act, passed April 11th, 1842, which fixes the compensation of other than the criers of the supreme court at $1.50 per day, “ to be certified by the clerk of the court, and to be paid by the treasurer of the county, or chamberlain of the city, in which such court shall be held, on the production of the certificate of the clerk, specifying the number of days such crier shall have attended.”
 

 This law dispenses with the auditing of the account by the board of supervisors, since it authorizes criers to go directly to the chamberlain or county treasurer with the clerk’s certificate, as the evidence on which the treasurer is to pay the account; but should he not comply with the demand, is he subjected to an action at law for the payment ? The statute has not said so; it has not provided that remedy. If the common law has, it
 
 *70
 
 should be made to appear, by averment and by proof, that the refusal was wilful, that the treasurer had funds in his hands applicable to such purpose, not otherwise appropriated. No such allegation is made in this case, and, therefore, there is no such right of action shown.
 
 (Bartlett
 
 v.
 
 Crozier,
 
 17 Johns. 458.)
 

 There can be no failure of justice for the want of a remedy in that form; the law has provided another, which is certainly more appropriate, and that is, by
 
 mandamus,
 
 the proceedings in which are regulated by statute. (2 E. S. 586.) This is just as applicable to county treasurers, as to supervisors, when they refuse or neglect to perform their official *duties, and it can be made more immediately coercive and effectual, than an action at law and a judgment and execution, which, after all, being against them in an official and representative capacity, might prove unavailing as a means of obtaining payment.
 

 On the ground, that an action in the present form will not lie against the city chamberlain, the judgment below should be affirmed; but as the plaintiff would thereby be turned round to the other mode of proceeding suggested, I shall proceed to examine the merits of the claim, which have been fully discussed before us.
 

 It has been argued as if the plaintiff’s right to the compensation sued for, depended on the power of the justices of the marine court to appoint a crier, and as if their authority to do so, resulted from its being a court of record, for it is not pretended, that in the creation of the court, or in any subsequent statutory power conferred, there has ever been an express grant of such a power. If, therefore, it exists at all, it must exist by implication, as a common-law power • incident to all courts of record. The court below appears to have held, that although the marine court possesses some of the attributes of a court of record, and is, by statute, treated as a court of record, yet, that it is such only for the pur
 
 *71
 
 pose of fully exercising the powers which have been expressly conferred upon it; and that it is not a court of record, in the strict legal sense of the term, like courts of general common-law jurisdiction; and, therefore, it has none of the incidental powers common to courts of the latter description, and, consequently, can create no office, nor appoint any subordinate officer of the court, unless especially authorized by statute to do so. This appears to be a correct view of the subject, and a very proper contusion.
 

 In establishing the court originally, and in the powers since delegated to it, the legislature have provided for all the appointments deemed necessary to its organization and the regular conduct of the business intrusted to its jurisdiction. *Three justices, a clerk, and officers to serve process, are given to it. For their services, compensation is made, in the shape of fees payable by the suitors, of which there is a fee-bill peculiar to that court. There is no compensation to be made for any service rendered there, except to the justices, the clerk, and the constables and marshals, who are authorized to serve its process, and to jurors and witnesses who may be required to attend. The fee-bill contains no fee for such a person as a crier of the court, nor for any service performed there, similar to the services performed by criers in other courts. The omission to make any such provision, while every other service therein was being provided for, goes strongly to show, that such an officer as crier of that court was never contemplated. I speak now of criers as being officers of the court; they are so. Fees were heretofore given to them, as such officers, along with all other officers mentioned in the statutory fee-bills. In the enumeration and clas-sificat: on of public officers, as declared in our last revision of the statutes, criers of the several courts are mentioned (1 R S. 96); and wherever appointments are authorized to be made by the courts of this state, they
 
 *72
 
 are spoken of as appointments of officers of tbe court. (I R. S. 109, §28.)
 

 I would not deny to tbe justices of any court tbe right to employ persons to attend and perform tbe services usually required of criers, but unless they are authorized to create an office and to fill it by appointment, tbe attendants so employed, would not be officers of tbe court, nor entitled to tbe fees or compensation provided by law for officers of that description.
 

 Tbe policy of tbe law by which the Marine Court was instituted, and by which it is governed at this day, is, that it should defray its own expenses out of tbe fees and emoluments attached to the offices created in it, without charge to tbe public treasury. Tbe judges, therefore, take to themselves the fees of their office; tbe clerk takes his fees; tbe constables and marshals theirs. To bold that an additional officer may be appointed in that court, under claim of an incidental *or implied power, whose services are to be a county charge, would seem to be contrary to tbe whole scheme of the court, and to the policy on which it is founded.
 

 Another view may be taken. Prior to 1840, the compensation to criers was always in fees, forming part of the costs and fees in each particular action or proceeding; and the courts in which such fees were allowed, are particularly mentioned. Thus, in the first fee-hill adopted by the legislature, soon after the organization of the courts, under the first constitution of 1777, the court for the correction of errors, the supreme court, circuit courts, courts of common pleas, sessions and mayor’s courts, are mentioned as the courts in which criers’ fees are chargeable along with the fees of the other officers of the same courts. (2 Greenleaf’s Laws of N. Y. 242.) And this continued to be the case, in all the subsequent fee-bills, in the revisions of 1801, 1813 and 1830. No fees for criers in any other courts, or before any other judicial officers, are given (except fees to the sergeant-
 
 *73
 
 at-arms of tbe court of chancery, which are similar),, although the fee-bills referred to contain the fees allowed to be charged by various other courts and officers.
 

 Thus stood the law in relation to criers and their fees, when the act of May 14th, 1840, was passed, which, by its 9th section, repealed all laws concerning fees for the services of criers in all courts of law, except the court for the correction of errors; and by its 10th section, substituted a per diem compensation, making a distinction in regard to the amount between the crier of the supreme court and the “ criers of other courts,” and in the manner of payment. The same distinction is kept up in the 1st section of the amendatory Act of April 11th, 1842. Now, to whom do the words “ criers of other courts” refer, and to what do they relate ? They are found in these new provisions of law, which are clearly substitu-tional, being intended to provide a
 
 per diem,
 
 compensation instead of fees, and a compensation to be paid by the state to one officer, and by the several counties to the others, instead of being paid by the suitors of *the respective courts. Do they not, then, refer to such criers, and to the criers of such courts only, as are mentioned in the previous fee-bills, where fees were provided for criers ? I think, there can be but one answer to this question, and that is, that in making the discrimination between the crier of the supreme court, and “the criers of other courts,” the legislature intended, by the latter, such criers only as had been previously, and were then, in the receipt of fees. It appears to me, that it would be a very forced construction, to say that those words were intended to create the office of crier in all the other inferior courts of the state, or to put such persons as might be employed to attend any of the courts of “peculiar and special jurisdiction,” mentioned in 1 ft. S. 220, upon the footing of criers entitled to a daily compensation at the public expense. If, therefore, we concede to the justices of such courts the
 
 *74
 
 power to appoint attendants, for the purpose of performing all such duties before them, it by no means follows, that, under the present laws relating to the compensation of criers, the persons so appointed become entitled to the compensation of criers out of the county treasury.
 

 We think, the appellant is not a crier, within the meaning of the sections referred to of the statutes passed in 1840 and 1842; and the judgment below, for these reasons, is also correct. This being the unanimous opinion of the court, the judgment is affirmed.
 

 Judgment affirmed