THE PEOPLE ex rel. JAMES RYAN, Respondent, v. ANDREW H. GREEN, Comptroller of the City of New York, Appellant.

The provision of the act of 1873 extending and defining the civil jurisdiction of the Court of Common Pleas for the city and county of New York and certain other city courts (§ 1, chap. 239, Laws of 1873), which gives to the courts therein named original jurisdiction in law and equity, concurrent and coextensive with the Supreme Court, in all civil actions and in all special proceedings of a civil nature, includes proceedings by mandamus.

The legislature is not prohibited by the State Constitution from conferring the power upon said courts to issue such writ directed to any inferior court, body or person within its territorial jurisdiction on such subject-matters as are within the scope of that writ.

Although the general words of said statute, so far as they may be construed as attempting to give to the courts named therein territorial jurisdiction, coextensive with the Supreme Court, are inoperative; so far as they confer jurisdiction over new subject-matter to be exercised within the locality to which said courts are confined by the Constitution and subject to the power of the Supreme Court, expressly reserved, they are valid and operative.

Accordingly *held*, that the Court of Common Pleas for the city and county of New York had power to issue a writ of mandamus, directed to the comptroller of the city, requiring the payment of the salary of relator, as deputy clerk of the Court of Special Sessions for the city and county of New York.

But *held*, that, considering the deputy clerkship as a county office, a writ of alternative mandamus issued in such case, prior to 1874, was defective in not averring that the relator's claim for salary had been audited by the board of supervisors and the proper vouchers therefor examined and approved by the auditor of the finance department and the comptroller. Considering the relator as a city officer his remedy is by action against the city and not by mandamus.

A want of averments in an alternative writ of mandamus showing a title in the relator to the relief sought, although the objection be not taken in the return to the writ, may be taken advantage of at any time before a peremptory writ is awarded.

The incompatibility between two offices, which upon the acceptance of the one by the incumbent of the other operates to vacate the latter, is not simply a physical impossibility to discharge the duties of both offices at the same time, but it is an inconsistency in the functions of the two offices, as where one is subordinate to the other or where a contrariety and antagonism would result in the attempt by one person to faithfully and impartially discharge the duties of both.

The office of member of assembly is not incompatible with that of deputy clerk of the Court of Special Sessions of the city and county of New York, and, prior to the passage of said act of 1873, the acceptance of the former by an incumbent of the latter did not, *ipso facto*, vacate the latter.

Although there is no vested right to an office which may not be disturbed by legislative enactment, yet, to take away the right to the office, the terms of the statute in which the purpose is stated must be clear.

The provision of the charter of 1873 of the city of New York (§ 114, chap. 335, Laws of 1873), providing that any person holding office under the city government who shall, during his term, accept a seat in the legislature shall be deemed thereby to have vacated his office, was prospective and did not operate to vacate a city office held by a member of assembly at the time of its passage.

(Argued June 16, 1874; decided September 22, 1874.)

Appeal from order of the General Term of the Court of Common Pleas for the city and county of New York, affirming an order of Special Term directing a writ of peremptory mandamus to issue.

An alternative writ was issued alleging, in substance, that the relator was, on or about May 1st, 1870, duly appointed deputy clerk of the Court of Special Sessions for the city and county of New York at a salary, as fixed by law, of $5,000

1874.] PEOPLE EX rel. RYAN *v.* GREEN. 297

Statement of case.

per annum, which office he has continued to hold and still holds; that he presented his claim for salary for the months of February, March, April and May, 1873, to the defendant, which the latter refused to pay.

The return to the writ simply alleged that, subsequent to the appointment of relator, in the year 1872, he was duly elected a member of the legislature, which office he accepted and entered upon the performance of its duties, and was engaged in such performance, in the city of Albany, during the months of February, April and May, thus rendering it impossible to perform the duties of the said office of deputy clerk which required his personal presence in the city of New York, and that he did not perform the duties of the latter office during those months.

Upon the writ and the return an order was granted directing the issuing of a peremptory writ, notwithstanding the return, directing the payment of the salary.

*James C. Carter* for the appellant. A motion for a writ of peremptory mandamus is equivalent to a demurrer to the return, and lays open the writ to attack. (*Com. Bk.* v. *Canal Comrs.*, 10 Wend., 25; Tapping on Mandamus, 338.) The court below has no jurisdiction to issue the writ of mandamus. (3 Bl. Com., 110; *Awdley* v. *Joy*, Popham, 175; *Fish* v. *Weatherwax*, 2 J. Cas., 215, note 217; *Landers* v. *S. I. R. R. Co.*, 53 N. Y., 450.) The relator by continuing to hold his office as member of the legislature, after the passage of the amended charter of 1873, vacated from that date his office as deputy clerk of the Sessions. (Laws 1863, chap. 335, § 114, p. 519; *Queen* v. *Tithe Comrs.*, 19 L. J. [N. S.], [Q. B.], 177; 2 Jones & Varick, 125, 127; Van Schaick's Laws, 241; 1 Kent & Radcliff, 305; 2 R. L., 504; *Devoy* v. *Mayor, etc.*, 36 N. Y., 449; *Millwood* v. *Thatcher*, 2 T. R., 82; A. & A. on Corp., § 434.) To entitle the relator to a mandamus his account must have been audited by the board of supervisors and by the auditor in the financial department of the city, and the voucher therefor audited and allowed by

298      People ex rel. Ryan *v.* Green.      [Sept.,

Opinion of the Court, per Folger, J.

the auditor and approved by the comptroller. (1 Laws 1870, chap. 190, § 6, p. 482; Laws 1873, chap. 335, § 33, p. 493.)

*Richard O'Gorman* for the respondent. There is no such incompatibility between the offices of deputy clerk of Special Sessions and member of the legislature as prevents both positions being filled by the same person at the same time. (1 Bl. Com., 175, note; 4 Doug., 87; *Rex* v. *Pateman,* 2 T. R., 777; *Verrier* v. *Mayor of S.,* 1 Sid., 304; *Dyer's case,* 4 Inst., 310; *Bissel's case,* 1 Doug., 39; *Milward* v. *Thatcher,* 2 T. R., 82; *Rex* v. *Jones,* 1 B. & A., 677; *Rex* v. *Patterson,* 4 id., 15; *Rex* v. *Lizzard,* 9 B. & C., 421; *Rex* v. *Trelawney,* 3 Burr., 1615; *Missouri* v. *Moore,* 48 Mo., 242.) A commission of a felony by an officer of the State does not without statute, *ipso facto,* work a vacation of the office. (*State of New Jersey* v. *Pritchard,* 12 Am. L. Reg., 514; *Page* v. *Harden,* 8 B. Mon., 648, 656; *Barnard* v. *Hoboken,* 3 Dutch., 412.)

Folger, J. The appellant contends that the court below had no jurisdiction to order and issue a writ of mandamus.

In opposition to this stands the act of the legislature, passed 17th April, 1873 (Laws of 1873, chap. 239, p. 363), by the first section of which it is enacted, that the Court of Common Pleas for the city and county of New York has henceforth original jurisdiction at law and in equity, concurrent and coextensive with the Supreme Court in all civil actions, and of all special proceedings of a civil nature. The proceeding by mandamus is included in these latter phrases, "civil actions" and "special proceedings of a civil nature." (*The People ex rel.* v. *Sage,* 3 How. Pr., 56; *The Same* v. *Lewis,* 20 id., 470.)

It is insisted, however, that this statute is unconstitutional. The argument is this: The authority to issue the writ of mandamus was in England originally lodged exclusively in the Court of King's Bench, and so it remains to this day. At the first establishment of the judicial system of this State

this peculiar jurisdiction of that court was bestowed exclusively upon the Supreme Court, and has ever since remained there. Therefore, it cannot be given to any other court.

The English books do declare that the power to issue the high prerogative writ of mandamus belongs exclusively to the Court of King's Bench, though some qualify the declaration with the phrase "in general." (Black. Com., bk. 3, p. *110; 3 Steph. Com., 697; 1 Chitty Gen. Pr., 789; Tapping on Man., * 5, note *f*; 2 Tomlin's Law Dict., 512, " *Mandamus*.") The reason given for this is, that the king having an executive power in him for that purpose, hath transmitted the same in a more special manner, for the preservation of right and justice, to that court in which he was once wont to sit in person, and in which he is yet taken to be present. Another reason more applicable to this case and to this time is, " because of the general superintendence which it exercised over all inferior jurisdictions and persons." Notwithstanding these declarations, it is to be noted that HOLT, C. J., speaks of a " mandamus out of chancery " in such way as that it may be inferred that it was not unusual, or at least not unknown. (*The Mayor of Coventry case*, 2 Salk., * 429 ; see, also, *The Rioters' case*, 1 Vernon, 175 ; *Sikes* v. *Ransom*, 6 J. R., 279.) Parliament has, of later days, provided for a mandamus to examine witnesses in India, and that the writ may issue out of any court at Westminster (1 Chitty Gen. Pr., 789, note *e*); and for a mandamus " incidental to an action," which may be issued by any of the superior courts. (3 Steph. Com., 697.) The enactment last alluded to is to be confined to such matters as might be enforced by a prerogative writ of mandamus ; it facilitates the obtaining of such a writ, and extends the power of granting it to other courts, as well as to the Queen's Bench. (*Benson* v. *Paull*, 6 Ell. & Bl., 273.) So that it is not strictly accurate to say, that the power to issue a writ of mandamus was originally lodged exclusively with that court; and quite inaccurate to say that it so remains to this day.

Nor can it be admitted that at the first establishment of the judicial system of this State, this jurisdiction of the King's

Bench was bestowed so exclusively upon the Supreme Court, and now so exclusively remains there, as that it may not, by legislative authority, be shared in by other courts. There is great force in the position that there is a necessity, that the power to compel inferior or subordinate tribunals, magistrates and all others exercising public powers, to perform their duty, should, in a well constituted government, reside in the highest judicial authority having original jurisdiction. It may well be argued that, by the principles of the common law, this power would not be incident to any court which did not possess a general superintendence over all inferior jurisdictions and persons, such as that of the Court of King's Bench. It may not be well argued, however, that the legislative power may not confer such jurisdiction, wholly or partially, upon any court or courts; unless there is shown some constitutional inhibition, express or clearly to be implied. It is obvious, that the theory does not unalterably prevail in this State, that the sovereignty thereof is manifested in one court more than in another. The courts are, all of them, tribunals in which the sovereignty of the people, through the duly constituted judicial authorities, in fact, dispenses justice and affords remedies. So that the reasons for the claim of exclusive jurisdiction to issue this writ in the Court of King's Bench, are not prevalent in this State. If the power is in the Supreme Court alone, it is because the Constitution will not allow it to be placed elsewhere. Thus it is that Thompson, J., in *Kendall* v. *United States* (12 Peters, 524–621), says: "But it cannot be denied, but this common-law principle may be modified by the legislature in any manner that may be deemed proper and expedient. No doubt the British Parliament might authorize the Court of Common Pleas to issue this writ, or that the legislatures of the States where this doctrine prevails, might give power to issue the writ to any judicial tribunal in the State, according to its pleasure; and in some of the States this power is vested in other judicial tribunals than the court of highest original jurisdiction." In the same case, Taney, C. J.,

delivering a dissenting opinion, while asserting that the power did not, by the common law, belong to any court whose jurisdiction was local, and not coextensive with the sovereignty which established the court, concedes that it may, without doubt, be conferred on such a court by statute. (See also, as bearing upon this question, *Kentucky* v. *Dennison*, 24 How. [U. S.], 66; *Gilman* v. *Bassett*, 33 Conn., 298.)

Nor do we find in the Constitutions, from time to time adopted by the people of this State, an express or implied inhibition upon the legislature, that this power shall be and remain exclusively in the Supreme Court. It is understood that the Supreme Court, so far as its jurisdiction and powers are concerned, was, in the main, found in existence by the Constitution of 1777. It did no more than recognize, and thus continue that existence. The Constitution of 1821 merely recognized the existence of the court, and fixed the number of its members. That of 1846, declared that there should be a Supreme Court having general jurisdiction in law and equity. By virtue of these Constitutions, the Supreme Court was continued with the jurisdiction over this matter given by the common law. So far as the Constitutions spoke, the jurisdiction was not given to any other court, unless it also belonged to the Court of Chancery, as above alluded to. But it does not appear that this jurisdiction was given so exclusively, as that thereafter no other court could become a sharer in it. Each of these Constitutions did give to the legislature the power to make alterations in the common law, and that of 1846 reserved to it, the same powers to alter the jurisdiction and proceedings in law and equity as it had before possessed. (Art. 6, § 5.) The judiciary article, adopted in 1869, declares (sec. 6), that: "There shall be the existing Supreme Court, with general jurisdiction in law and equity, subject to such appellate jurisdiction of the Court of Appeals as now is or may be prescribed by law." Though this section preserves to the court general jurisdiction, it does not prohibit the legislature from giving general jurisdiction to other tribunals. It may safely be said, that we may not

find in this article any prohibition upon the legislation embodied in this statute, unless it is in the twelfth section thereof. That section has been lately under consideration in this court, in *Landers* v. *The Staten Island Railroad* (53 N. Y., 450). The conclusions of that case, so far as they are applicable, must govern the decision of this. So doing, it must be held that the act of 1873 could not and did not confer upon the court below, any greater jurisdiction than it before had, over persons and matters the subjects of action, in other parts of the State, outside of the territorial limits wherein it was established; but, that (if not open to another objection, considered further on), it could and did confer upon it jurisdiction over subjects and matters, not theretofore within its jurisdiction, to be exercised within the territorial limits and over the persons, to which and whom it is confined by the Constitution. The appellant urges, that if this statute be upheld, the court below may assume supervisory authority over the Supreme Court, and issue a writ of mandamus to it. It may be doubted, whether the judiciary article of 1869 means other than that the court below shall remain an inferior, as well as a local court, subject still to the supervisory power of the Supreme Court, the only court of original, general jurisdiction, coextensive in the arena of its exercise with that of the sovereignty which created it, and still the supreme judicial representative thereof. This need not be passed upon at this time, for the act takes care not to infringe the greater authority of the Supreme Court. By the third section, the Supreme Court may remove to itself, and change the place of trial or hearing, of any civil action or special proceeding of a civil nature pending in the Court of Common Pleas. The conclusion is (subject to the consideration of the objection above alluded to), that the legislature may, without infringing the Constitution in any express or implied prohibition, confer upon the court below the power to issue a writ of mandamus, directed to any inferior court, body or person within its territorial jurisdiction, in such subject-matters as are within the scope of that writ.

The question remaining to be considered upon this branch of the case is, whether the provisions of the statute are so interwoven and dependent, as that the power which could be conferred with validity, cannot be separated from that which could not. If any part of an act be unconstitutional, the provisions of that part may be disregarded, while full effect may be given to such as are not repugnant to the Constitution. (*Bank of H.* v. *Dudley*, 2 Peters, 526; *Duer* v. *Small*, 17 How. Pr., 201, 205.) Where a part of a statute is unconstitutional and void, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, or so connected in meaning, that it cannot be presumed that the legislature would have passed the one without the other. Applying this rule to this statute, it is evident that it gives to the court below, jurisdiction over certain matters concurrent and coextensive with that of the Supreme Court. This may be construed to mean coextensive both in territorial extent and in subject-matter. The first would be void; the latter would not. They are not so connected as that the latter may not be separated from the former. The general words may be held valid to confer a jurisdiction only so far as subject-matter is concerned, and void when they are sought to be used to give coextensive territorial jurisdiction. And without specification of the different provisions of the statute, the same may be said of them all. So, in *Baker* v. *Braman* (6 Hill, 47), a statute was held to be unconstitutional as to one who did not consent to it, and valid as to one who did. We think that the statute may be held operative as far as it confers jurisdiction over a new subject-matter, to be exercised within the locality to which the courts named in it are confined by the Constitution, and subject to the power of the Supreme Court, expressly reserved.

The point made by the appellant, that section 114 of the last charter of the city of New York (Laws of 1873, chap. 335, p. 519) operates to vacate the office of deputy clerk, held by the relator, is not tenable. The language of the sec-

tion is prospective. A law may not operate upon existing rights and liabilities without it in terms expresses such intention. (*Johnson* v. *Burrell*, 2 Hill, 238.) Though there is no vested right to an office, which may not be disturbed by legislation, yet the incumbent has, in a sense, a right to his office. If that right is to be taken away by statute, the terms should be clear in which the purpose is stated. This section is quite otherwise, if it has such purpose.

Nor is the office of a member of assembly, in the legal sense of the word, incompatible with that of deputy clerk of the Court of Special Sessions of the city and county of New York. After the exhaustive opinions delivered in the court below upon this point, it would be an unwarrantable use of time to go over the ground again, so well explored in them. It may be granted that it was physically impossible for the relator to be present in his seat in the assembly chamber, in the performance of his duty as a member of that body, and at the same time at his desk in the court doing his duty as deputy clerk thereof. But it is clearly shown in those opinions, that physical impossibility is not the incompatibility of the common law, which existing, one office is *ipso facto* vacated by accepting another. Incompatibility between two offices, is an inconsistency in the functions of the two; as judge and clerk of the same court — officer who presents his personal account subject to audit, and officer whose duty it is to audit it. The case of *Bryant* (4 T. R., 715, and 5 id., 509), cited by appellant, does not conflict with this view. It was decided upon the meaning of the particular statute, which required the personal presence of the officer at the prison. Where one office is not subordinate to the other, nor the relations of the one to the other such as are inconsistent and repugnant, there is not that incompatibility from which the law declares that the acceptance of the one is the vacation of the other. The force of the word, in its application to this matter is, that from the nature and relations to each other, of the two places, they ought not to be held by the same person, from the contrariety and antagonism which would result in the

1874.]          PEOPLE ex rel. RYAN v. GREEN.          305

Opinion of the Court, per FOLGER, J.

attempt by one person to faithfully and impartially discharge
the duties of one, toward the incumbent of the other.
Thus, a man may not be landlord and tenant of the same
premises. He may be landlord of one farm and tenant of
another, though he may not at the same hour be able to do
the duty of each relation. The offices must subordinate, one
the other, and they must, *per se*, have the right to interfere,
one with the other, before they are incompatible at common
law. For the authorities sustaining these views, we refer to
the opinions in the court below, where they are laboriously
collected.

It is not claimed that there is an express incompatibility
created by the Constitution, or by statute, other than that
above referred to.

The appellant makes the further point, that the alternative
writ makes no averment that the account of the relator for
his salary has been audited by the board of supervisors and
by the auditor of the finance department, and that the proper
voucher therefor has been examined and allowed by the latter
officer and approved by the comptroller. It is claimed that
if the relator is a county officer it was necessary that this
should have been done to sustain an application for a manda-
mus. It is also contended that if the relator is a city officer
he has no right to a mandamus, but his remedy is by action
against the city. These objections to the relief sought by the
relator are not taken in the return to the alternative writ.
But it seems (*Com. Bk., Albany*, v. *Canal Commissioners*,
10 Wend., 26), that any defect in the substance of that writ
may be taken advantage of (such as a want of sufficient title
in the relator to the relief sought), at any time before the
peremptory mandamus is awarded. These objections were
raised in the court below.

If the relator is a city officer he must seek his remedy
against the city. And he may have that remedy by action.
Where there is a remedy by action an application for a man-
damus will be denied; with the limitation that an action
against a public officer for a neglect to perform his duty, will

not be held to be such a remedy by action as will prevent the allowance of a mandamus. (*The People ex rel.* v. *Hawkins*, 46 N. Y., 9.)

If the relator is a county officer then he must pursue his remedy and show his title, in accordance with the laws relative to claims against the county. In general, a claim against a county which falls within the class of "county charges" is not the subject of an action, but must be presented to the board of supervisors of the county to be audited by them. (*Huff* v. *Knapp*, 5 N. Y., 65.) Charges against the county of New York have been held to be in this category. (*Brady* v. *The Supervisors*, 10 N. Y., 260.) It has been held in this court, that the power of audit remains in the board of supervisors of the city and county of New York, at least, prior to the legislative session of 1874. (*The People ex rel.* v. *Green*, decided 26th May, 1874.) The acts of 1857 and 1870 (Laws of 1857, chap. 590, § 6, vol. 2, p. 286; Laws of 1870, chap. 137, pp. 366–374; id., chap. 190, p. 482), were there examined, and the conclusion was, that the board of supervisors was yet the source of authority for expenditures, and that the auditor of the financial department of the city government, and the comptroller, are required to examine and approve of the vouchers furnished from the board, with a view of ascertaining whether the will and authority thereof sustains the payment sought for. Why is not the objection to the alternative writ a good one? The elaborate opinions delivered in the court below do not notice it. The appeal book does not show that it was made there. But the respondent's points concede that it was, and claim that it was disposed of on the argument. The position taken by the respondent here is, that no vouchers were necessary, and there was nothing to audit; that the relator showed that he held the office of deputy clerk, at a salary fixed at a certain rate, in accordance with law; that thus the liability of the county was fixed by law, and the only duty of the comptroller, as its chief financial officer, was to pay. This is not correct. It may be quite certain, in the mind of the comp-

troller, that the claim is legal, and in justice should be paid, but the law is imperative that it must be first passed upon by the board of supervisors. But, as we have seen, by a reference to the cases cited (*Huff* v. *Knapp*, *Brady* v. *Supervisors*), all county charges must be presented to the board of supervisors for audit and allowance, and the financial officer cannot pay until he has the authority of the board, expressed by the voucher showing an audit and allowance. If the relator is a county officer his claim is a county charge. It cannot be paid but on the authority of the board of supervisors. By the act of 1857 (see *supra*, § 6), this must be upon vouchers from the board, examined and allowed by the auditor, and approved by the comptroller. No money can be drawn from the treasury otherwise. It is stated, on the respondent's points, that the relator's name was duly returned on the official pay-roll; that such was the usual course as to salaries; that the appellant's counsel admitted this in the court below, and that the pay-roll has been, in fact, examined and audited by the auditor, as far as such a claim can be the subject of audit. This does not otherwise appear to us. Doubtless, such is the understanding of counsel for the relator. It is not consistent, however, with the presentation by the appellant of the printed point, claiming the advantage of the absence from the writ of averments to that effect. We must be governed in such case by the record before us.

We are of opinion that the lack of the averments in the alternative writ is fatal to the relator's application.

It follows, that the order appealed from must be reversed.

All concur.

Order reversed, and motion for peremptory mandamus denied.