HENRY R. DECKER, Respondent, v. GEORGE CANZONERI, Appellant, Impleaded with TONY CANZONERI, Defendant.

Third Department, January 11, 1939.

*Stanley B. Johnson* [*William L. Browning, Jr.*, of counsel], for the appellant.

*Flanagan & Kaercher* [*William A. Kaercher*, of counsel], for the respondent.

HEFFERNAN, J. Defendant George Canzoneri has appealed from an order of the Ulster Special Term of the Supreme Court denying his motion to vacate a judgment of foreclosure and sale made by an official referee.

On December 16, 1936, all the issues in this action, which was brought to foreclose a mechanic's lien, were, on consent of all parties, referred to the official referee to hear and determine. On August 10, 1938, after a trial of the issues, the referee made and

filed his decision which adjudicated all the matters involved in the controversy. On August 17, 1938, the referee signed the final judgment of foreclosure and therein appointed a referee to sell the property.

On this appeal the sole question presented for determination is the authority of the official referee to nominate in the judgment of foreclosure a referee to sell.

Prior to 1935 section 115 of the Judiciary Law authorized the appointment of official referees to whom the court might refer " any action, matter or proceeding pending in said Supreme Court, * * * referable by statute or the rules and practice of said court." The powers of such referees were defined in section 469 of the Civil Practice Act. In 1931 section 116 of the Judiciary Law was amended by chapter 679 of the laws of that year so as to confer additional powers on official referees.

By chapter 854 of the Laws of 1935 said section 116, as amended, was repealed and a new section known as 117 was added to the Judiciary Law containing substantially the same provisions as those repealed. The pertinent provisions of that section are: " As to all motions, actions or proceedings submitted to an official referee by stipulation of the parties appearing therein, or order of the court, except matrimonial actions, the same shall be deemed duly referred to said official referee and, in addition to all the powers now conferred by section four hundred sixty-nine of the Civil Practice Act, he shall proceed therein with the same power and authority as a justice presiding at a regular Special Term of the Supreme Court and entertain and grant motions for a new trial, grant stays and orders to show cause, and he shall have similar jurisdiction and authority as to any other action or proceeding referred to him by order of the Supreme Court including matrimonial actions." In denying defendant's motion the Special Term rested its decision solely on this section.

We believe that the conclusion of the Special Term is erroneous for several reasons.

When the referee completed the performance of his duties and made and filed his decision his authority terminated. Judgment might then be entered upon that decision without further warrant by the clerk as a ministerial act. (Rules Civ. Prac. rule 198; *Clapp* v. *Hawley*, 97 N. Y. 610; *Corr* v. *Hoffman*, 256 id. 254, 263.) The act of the referee in signing the judgment was wholly superfluous. After the referee had signed his decision he was without jurisdiction to take any further or supplementary action in the matter. Any further proceeding on his part was without authority.

Section 117 of the Judiciary Law does not confer upon official referees, except to a very limited extent which we shall note later, any greater powers than those possessed by referees to hear and determine generally. It has been the law for many years that a referee appointed with full power to hear, try and determine, being substituted in the place and in stead of the judge, has, over the case referred to him, all the powers of the court in which the cause is pending. (*Schuyler* v. *Smith*, 51 N. Y. 309.) The power of the court in this State to appoint a referee is one of very ancient origin. The practice of referring matters of a long or complicated account began when New York was a colony under the Dutch. Under the Dutch rule actions involving long accounts could be referred to arbitrators or referees, and such a reference was a very common mode of trial during that period. This practice was continued until some years after the capitulation of the Dutch to the English in 1683, when by the charter of liberties and privileges granted by the Duke of York to the inhabitants of the Colony it was provided that " all trials shall be by the verdict of twelve men." Thereafter, all actions in the common-law courts of the Colony were triable before juries, except the action of account, and that was applicable only to a limited class of cases, involving the examination and taking of accounts. Both in England and in the Colony this remedy was found unsatisfactory and the procedure in such cases developed to assumpsit trial before a jury, until in 1768, by statute, trial before referees was established. That was the first act in the Colony of New York authorizing a reference in any common-law action. This statutory method of trial by referee continued until the American Revolution, and, after a slight lapse, was re-established and continued by the act for the amendment of the law passed in 1788. (53 C. J. 680; 23 R. C. L. 284; *Steck* v. *Colorado Fuel & Iron Co.*, 142 N. Y. 236.)

Under the present practice the statutory authority for the appointment of referees is found in sections 80 and 466 of the Civil Practice Act. Section 506 of the Civil Practice Act expressly provides that a referee to sell real property must be appointed by the court. Further evidence of the fact that the court is the sole source of authority for the appointment of a referee in foreclosure cases is found in rule 265 of the Rules of Civil Practice. That rule provides that in such cases the referee " shall be selected by the court, and the court shall not appoint as such referee a person nominated by a party to the action or his counsel."

Manifestly in the case before us the referee had no power or authority to appoint a referee to sell the realty affected by the lien. Plaintiff should have applied to the court for the appoint-

ment of a referee to carry the judgment into effect. The court could not delegate its power to the official referee to make such an appointment. The appointment of a referee is a judicial function and can be exercised only by the court or a judge thereof. (*DeHart v. Hatch*, 3 Hun, 375.) That decision although rendered by the General Term of the Supreme Court has been repeatedly cited and approved by the Court of Appeals. (*People ex rel. Swift v. Luce*, 204 N. Y. 478.)

Section 117 of the Judiciary Law does not aid plaintiff. That section recites that in addition to the powers conferred by section 469 of the Civil Practice Act in matters referred to him an official referee " shall proceed therein with the same power and authority as a justice presiding at a regular Special Term of the Supreme Court and entertain and grant motions for a new trial, grant stays and orders to show cause, and he shall have similar jurisdiction and authority as to any other action or proceeding referred to him by order of the Supreme Court including matrimonial actions." It will thus be seen that the additional powers conferred upon an official referee by this section are: (1) To entertain and grant motions for a new trial, and (2) to grant stays and orders to show cause.

It is well settled that general jurisdiction territorially coextensive with that of the Supreme Court cannot be conferred on other tribunals. (*People ex rel. Swift v. Luce, supra; DeHart v. Hatch, supra; People ex rel. Ryan v. Green*, 58 N. Y. 295; *Sill v. Village of Corning*, 15 id. 297; *Mussen v. Ausable Granite Works*, 63 Hun, 367.)

The Supreme Court is the only court of original general jurisdiction co-extensive in the arena of its exercise with that of the sovereignty which created it. (*People ex rel. Ryan v. Green, supra.*) The jurisdiction of the Supreme Court is general, unlimited and unqualified and the Legislature has no power to limit or qualify it. (*People ex rel. Hill v. Supervisors*, 49 Hun, 481; *People ex rel. Mayor v. Nichols*, 79 N. Y. 582.) Any act of the Legislature which deprives the court of jurisdiction it had at the time of the adoption of the Constitution or limits or qualifies it is unconstitutional and void. (*Alexander v. Bennett*, 60 N. Y. 204; *City of Brooklyn v. Mayor, etc., of N. Y.*, 25 Hun, 612; *Popfinger v. Yutte*, 102 N. Y. 38, 42; *Hutkoff v. Demorest*, 103 id. 380; *Matter of Malloy*, 278 id. 429.)

The origin of the Supreme Court was through a statute passed by the Legislature of the Colony of New York on the 6th day of May, 1691. " 'This act founded the Supreme Court. * * * Not only did this act erect the tribunal which still continues the great law court of the State, but it vested in it a jurisdiction which change of government and constant reforms and revolutions in

procedure have been powerless to abridge in any material respect, for while its jurisdiction has been enlarged by its union with the Court of Chancery, its ancient jurisdiction still remains unimpaired.' " (*Matter of Steinway*, 159 N. Y. 250.)

The Constitutions of 1777 and 1821 did not create or continue the Supreme or Chancery Courts but treated them as existing. In the Constitution of 1846 it was declared that there should be a Supreme Court " having general jurisdiction in law and equity." In the Constitution of 1894 the Supreme Court was continued. (*Matter of Steinway, supra.*) The Constitution now in force provides: " The Supreme Court is continued with general jurisdiction in law and equity." (State Const. art. 6, § 1.)

The Legislature cannot limit or abridge the general jurisdiction of the Supreme Court as conferred by this section nor can it confer on any other tribunal general jurisdiction territorially coextensive with that of the Supreme Court. (*People ex rel. Swift v. Luce, supra.*) Unquestionably an abridgment of the jurisdiction of the court would result if it were held that the Legislature had authority to confer upon official referees the powers of the Supreme Court. If that could be done then the jurisdiction of the Supreme Court would depend upon the Legislature instead of the Constitution. (*DeHart v. Hatch, supra.*) Then, too, if the Legislature can invest official referees with the power and authority of justices of the Supreme Court, by the same token it may constitute them justices of the court. No one would seriously contend that such a statute would be sustained. The Legislature may not select the justices of the Supreme Court. They must be chosen by the electors of the respective judicial districts. (State Const. art. 6, § 1.) Their terms of office are fourteen years. (State Const. art. 6, § 4.) The latter section also makes provision for filling a vacancy occurring otherwise than by expiration of term. No person shall hold the office of justice of the Supreme Court longer than until and including the last day of December next after he shall be seventy years of age. (State Const. art. 6, § 19.)

It is common knowledge that practically all official referees received their appointment after attaining that age. The referee whose ruling is in question here for many years occupied the office of justice of the Supreme Court and discharged its duties with ability and distinction in its trial and appellate branches. At the time of his retirement in obedience to the constitutional mandate he graced our bench.

Respondent is relying on *Matter of Brock* (245 App. Div. 5) to sustain the order under review. That case is not an authority on the question before us. In the *Brock* case the litigation involved

the custody of an infant. By stipulation of the parties the matter was referred to an official referee " to hear and determine." After taking testimony the referee signed a decision in which he awarded custody of the child to the maternal grandparents. The Special Term declared the final order void on the theory that the statute (now section 117 of the Judiciary Law) under which the referee acted was invalid or unconstitutional if construed to authorize an official referee to hear and determine the proceeding. The Appellate Division reversed the order of the Special Term and held that the order of reference was valid. That was the only question decided in that case. The opinion of Mr. Justice CARS-WELL contains a very interesting and a very scholarly history of the Supreme Court, and of the law relating to the custody of infants. It may be perhaps that there are some statements in the opinion which give color to respondent's contention. In *Matter of Rogers* v. *Graves* (254 App. Div. 467) this court said: " A judicial opinion is authority only for what is actually decided. (*Rolfe* v. *Hewitt*, 227 N. Y. 486.) What the court did, and not what it said in doing it, is the thing of importance. The language used in an opinion should always be read in the light of the issues presented."

The order appealed from should be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs. The cause is remitted to the Special Term for the appointment of a referee to sell the property.

HILL, P. J., and McNAMEE, J., concur; RHODES and BLISS, JJ., dissent, with a memorandum by BLISS, J., in which RHODES, J., concurs.

BLISS, J. (dissenting). In real estate mortgage foreclosure actions it has been the accepted practice for many years for a justice of the court, sitting at Special Term, after either taking proof of the amount due on the mortgage or upon the incoming of the referee's report showing such amount, to grant judgment of foreclosure and sale and in this judgment to appoint a referee to conduct the sale. It was the obvious intention of the Legislature in adding the new section 117 to the Judiciary Law by chapter 854 of the Laws of 1935, to broaden the jurisdiction of official referees and thus unburden the court as well as eliminate unnecessary motions and delays. This statute gives an official referee in an action, in addition to certain other general powers under section 469 of the Civil Practice Act, jurisdiction to proceed with the same power and authority as a justice sitting at Special Term. The Legislature intended that the official referee should do those things which were usually done by the Special Term.

To hold that such referee might grant the judgment of foreclosure and sale but not direct the manner of the sale is placing too narrow a construction upon section 117 of the Judiciary Law and one clearly not intended by the Legislature. This act does not deprive the Supreme Court of any of its jurisdiction. The court may, in its order of reference, restrict the action of the official referee and retain unto itself the right to direct the manner of sale, including the appointment of a referee to sell. This legislation does not violate our State Constitution. (See *Matter of Brock*, 245 App. Div. 5; State Const. art. 6, § 20.)

The order should be affirmed.

RHODES, J., concurs.

Order reversed on the law and facts, with ten dollars costs and disbursements, and motion granted, with ten dollars costs, and the clerk of the county of Ulster is directed to enter a proper judgment. The cause is remitted to the Special Term for the appointment of a referee to sell the property.