James F. Dwyer, Esq. Informal Opinion No. 99-7 Counsel, Montgomery-Otsego-Schoharie Solid Waste Management Authority Two Clinton Square The Atrium, Suite 215 Syracuse, New York 13202 Douglas E. Landon, Esq. County Attorney County of Montgomery 3 Market Street Amsterdam, N Y 12010
Dear Messrs. Dwyer and Landon:
You have requested an opinion regarding whether a member of a participating county's governing board who concurrently serves as a member of the board of the Montgomery-Otsego-Schoharie Solid Waste Management Authority (the "Authority" or "MOSA") may vote on matters before either board that impact the other entity and whether the positions of member of a participating county's governing board and member of the MOSA board are compatible.
MOSA board members are appointed as follows:
 three members from the county of Montgomery to be appointed by the chairman of the board of supervisors and confirmed by the board of supervisors of such county all of whom shall be residents of the county and at least one of whom shall be a resident of the city of Amsterdam; three members from the county of Otsego to be appointed by the chairman of the board of representatives and confirmed by the board of representatives of such county all of whom shall be residents of the county and at least one of whom shall be a resident of the city of Oneonta; two members from the county of Schoharie both of whom shall be residents of the county, and who shall be appointed by the chairman of the board of supervisors and confirmed by the board of supervisors of such county. Public Authorities Law § 2041-b(1).
MOSA was established by Chapter 747 of the Laws of 1987. The powers of MOSA are set forth in Public Authorities Law § 2041-d and include,inter alia, the power to plan, develop, purchase and construct facilities for the disposal of solid waste and the power to collect, receive, extract, transport, process, dispose of, sell, store, convey, recycle and deal with solid waste. In furtherance of these powers, MOSA may acquire property, enter into contracts, borrow money and issue bonds. Id., § 2041-d.
Although MOSA is an independent legal entity, the interaction between the MOSA board and the county governing boards is extensive. These interactions include:
1. The chairpersons of the participating counties' governing boards appoint members to the MOSA board. These appointments are confirmed by the county governing boards, who also have the power to remove MOSA board members from office for "inefficiency, neglect of duty or misconduct in office. . . ." Public Authorities Law § 2041-b(1).
2. Participating counties may by resolution advance sums of money to or on behalf of MOSA and give, grant, sell, convey, loan, license the use of or lease to MOSA any property or facility which is useful to MOSA. Id., § 2041-c(1), (2).
3. The legislative bodies of participating counties may prescribe penalties for violations of MOSA by-laws, including the failure to comply with any by-law requiring the payment of any fee in connection with the delivery of solid waste. Id., § 2041-d(10).
4. Participating county governing boards may, upon request of the MOSA board, permit their officers and employees to be transferred to MOSA when needed to perform MOSA duties. Id., § 2041-f.
5. With the consent of the chairperson of the legislative body of a participating county or the legislative body of any municipality therein, MOSA may use the officers or employees of these municipalities. Id., § 2041-d(11).
6. Participating county governing boards may enter into contracts between and among other participating counties and/or MOSA in relation to the collecting, receiving, transporting, storage, processing or disposal of solid waste. Id., § 2041-t(1).
7. The legislative bodies of participating counties may adopt and amend local laws, ordinances and regulations imposing appropriate and reasonable limitations on competition with respect to collecting, receiving, transporting, delivering, storing, processing and disposing of solid waste. Id., § 2041-t(2).
8. Participating county governing boards may pledge to and agree with any MOSA bondholders that the county will not act in any way to impair the rights and remedies of bondholders. Id., § 2041-s.
9. The county governing boards may perform such other acts as shall be determined necessary or desirable to effectuate the purposes of MOSA, including the making of gifts, grants, loans or contributions to MOSA.Id., § 2041-t(4).
We will first address whether the offices are compatible. In the absence of a constitutional or statutory prohibition against dual officeholding, one person may hold two offices simultaneously unless they are incompatible. The leading case on compatibility of office is People exrel. Ryan v. Green, 58 N.Y. 295 (1874). In that case the Court held that two offices are incompatible if one is subordinate to the other or if there is an inherent inconsistency between the two offices. The former can be characterized as "you cannot be your own boss," a status readily identifiable. The latter is not easily characterized, for one must analyze the duties of the two offices to ascertain whether there is an inconsistency. An obvious example is the inconsistency of holding both the office of auditor and the office of director of finance.
There are two subsidiary aspects of compatibility. One is that the principle equally covers an office and a position of employment or two positions of employment. The other is that where positions are compatible, a conflict of interests may arise out of the simultaneous holding of the positions. The conflict can be avoided by declining to participate in the disposition of the particular matter.
The Public Authorities Law neither precludes nor permits the appointment of a member of a county governing board to the MOSA board. It provides that "residents" of participating counties must be appointed as members of MOSA's board. County legislators are required to be residents of their counties. Such dual officeholding is common among local public authorities. In the case of some other local public authorities, established prior to the establishment of MOSA, the Legislature specifically authorized members of the legislative body of the municipality for which the authority was formed to be members of the board of directors of the authority. General Municipal Law §553(4), enacted by L1962, ch921 (any one or more members of the board of directors of an urban renewal agency may be an official or an employee of the municipality); § 593, enacted by L1964, ch545 (the mayor and all of the members of the City Council of the City of Niagara Falls are members of the Niagara Falls Urban Renewal Agency); § 856(4), enacted by L1969, ch1030 (any one or more members of the board of directors of an industrial development agency may be an official or an employee of the municipality for which the authority was formed; see, OpAttyGen [Inf] No. 86-57); cf., Education Law § 6306(1), as amended by L1953, ch271 (one member of the local legislative body may be appointed to the board of trustees of a community college).
The obvious intent of the requirement that residents of participating counties be appointed to MOSA's board was to ensure that each participating county has appropriate representation in the decision making of the Authority. Certainly, county legislators, as elected representatives, can perform this role. Earlier legislation applicable to the many industrial development agencies and urban renewal agencies located throughout the State demonstrates that authorization of such dual officeholding is common. Significantly, the Public Authorities Law provides "that no elected official of a participating county or any municipality therein shall be appointed as an employee of [MOSA]." Id., § 2041-b(3). This prohibition on appointment of employees is an indication that the Legislature did not intend to prohibit county legislators from serving on MOSA's board of directors. The Legislature focused on this subject and did not prohibit elected municipal officials from serving as "officers" of MOSA. We surmise that the purpose of this prohibition, applicable to employees, was to prevent the appearance that elected municipal officials may have exercised influence to become an employee of MOSA. MOSA board members, on the other hand, receive no compensation and are only reimbursed for expenses. Id., § 2041-b(2). Therefore, we conclude that the Legislature has allowed members of the legislative bodies of participating counties to be MOSA board members.
Although there is extensive interaction between MOSA and participating counties, such interaction is typical of local public authorities whose board of directors may include legislators of the municipalities in which the authorities perform their duties. See, e.g., General Municipal Law §§ 554, 555, 858. The potential that the participating county legislators who serve on the MOSA board will have conflicting duties is minimized by the fact that MOSA was formed to perform services for the participating counties. Also, taking into consideration our conclusion that the Legislature has allowed participating county legislators to be MOSA board members, generally we believe that these dual officeholders may exercise the powers given to them as members of both bodies. If under specific circumstances, a person serving in both capacities cannot act in the public interest, the remedy is recusal.
We conclude that a person may serve as a member of the legislative body of a participating county and as a member of the board of directors of the Montgomery-Otsego-Schoharie Solid Waste Management Authority. Generally, he or she may exercise the statutory powers granted to both entities.
The Attorney General renders formal opinions only to officers and departments of State government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
JAMES D. COLE, Assistant Attorney General in Charge of Opinions
YVONNE M. HOVE
Assistant Attorney General