## Ostrander *vs.* Livingston and wife.

In May, 1825, L. and wife leased to H. a piece of land, in the city of New-York, for the term of 21 years. The lease contained a covenant that at the end of the term the premises, and the improvements thereon, should be separately valued and appraised, by sworn appraisers; and that in case the lessors should not, within ten days after the appraisement, elect to take the improvements at their appraised value, then the lessors would sell and convey the premises to the lessee, or his assigns, at the price the same should be appraised or valued at. H. assigned this lease to H. and M.; who afterwards assigned the same to The Sterling Co. In January, 1827, an agreement was made between the lessors and The Sterling Co. by which the former covenanted with the latter that in case The Sterling Co. should underlet or assign any lot or lots upon which no building had already been erected, such lots respectively to be 25 feet in front and 100 feet in depth, and if the under lessee or assignee of such lots respectively should actually build, or cause to be built, on each of the lots so assigned, a two story dwelling house or tenement, with a brick front, then and in such case each and every lot so under-let or assigned, and which should have such dwelling house or tenement erected thereon, should be chargeable with the annual rent of $60 only, as its proportion of the rent reserved in the original lease; and that such under lessee or assignee, at the termination of the original lease, should, in respect to the improvements on such lot, be entitled to the like appraisement and provisions as were in that behalf specified in the original lease. The Sterling Co. subsequently divided the land into lots of 25 feet in front and rear, and 100 feet in depth, and leased two of those lots to B. for the residue of the term, by separate leases; B. covenanting with The Sterling Co. to pay the rent, and the taxes and assessments, and to build upon each of the lots a house of at least two stories in height, with a brick front. And The Sterling Co. covenanted with B. that, at the end of the term, he should, in respect to the improvements on those lots, be entitled to the like privileges, &c. as were specified in the original lease. The Sterling Co. subsequently re-assigned the original lease to H. & M.; and by divers mesne assignments the same came to, and was vested in, V. at the expiration of the term. B., the lessee of the two lots, instead of building a two story house with a brick front on each lot, divided the two lots into five; each lot or subdivision being 20 feet in front by 50 feet deep, and fronting on another street. Upon the corner lot there was erected by B. or his assigns, a two story house with a brick front. Frame buildings were erected upon three of the other lots, and a feed-store of brick upon the fourth lot. These leases to B. afterwards came by assignment to O. the complainant. Shortly before the termination of the original lease, L. and wife agreed with V., the then owner thereof, to pay him for the buildings upon the demised premises, and procured from him an assignment of all his interest in the lease and leasehold premises to their son M. L. Upon the expiration of the lease L. and wife claimed that the complainant was not entitled to pay for the buildings so erected on the five sub-divisions of the two lots leased by The Sterling Co. to B., because they were not

Ostrander *v.* Livingston.

made in pursuance of the agreement with the Sterling Co.; and refused to join in the appointment of appraisers of those two lots and the buildings thereon. On a bill filed by the assignee of B. against L. and wife, to restrain the prosecution of suits at law brought against him and his tenants, to recover the possession of the two lots leased to B., and for a specific performance;

*Held* that the buildings erected upon the lots leased to B. were not such as were contemplated in the agreement between L. and wife and The Sterling Co., or as B. covenanted to build. That although it was not required that the building should cover the whole front of the lot, 25 feet in width, yet that the erection of such a house as was described in the agreement, if built partly on one lot and partly on another, was not a compliance with the terms of that agreement, or with the covenant in the leases to B., as to either lot. And that the complainant, as the assignee of B.. was not entitled to any benefit under the agreement of January, 1827; the covenant in that agreement, giving to the sub-lessees, or assignees of particular lots the right to an independent appraisal of their improvements, being limited to such lots as should have been improved in the manner therein contemplated.

*Held also,* that the rights of the complainant, in reference to improvements, were no greater than they would have been had the agreement of Jan. 1827, not been made. And that under the covenant in the original lease, the value of the whole leasehold premises, and the value of the whole improvements, were to be separately estimated; that the covenant giving the lessors the privilege of taking all the buildings or improvements at such valuation, or of conveying the whole of the premises demised, upon being paid the price at which the whole premises, exclusive of the improvements, were valued, at their election, was in its nature indivisible. And that if the entire interest of the lessee in distinct parcels of the demised premises had been assigned to different individuals, all who were interested in the performance of the covenants, or in the different parcels of the demised premises, must unite in the appraisal; and in the purchase of the whole premises, if the lessors elected to convey the same at the appraisal.

*Held further,* that the effect of the agreement of January, 1827, was the same as if the particular lots which were leased or assigned, and built upon in conformity to the terms of that agreement, had formed no part of the premises originally demised to H.

And the bill showing that several other lots of 25 feet by 100 feet, into which the demised premises were subdivided, were sublet to different persons, but not stating who such persons were, or whether any buildings were erected on their respective lots, and if so, whether they were erected in conformity to the provisions of the agreement of 1827, also

*Held* that no relief could be granted upon the bill of the complainant, as framed, even if he had made out a case entitling him to equitable relief in other respects. And that M. L., the assignee of the lease and of a part of the premises originally demised, so far as related to that covenant, was a necessary party to any bill for a specific performance thereof by the lessors; even though the consideration of the assignment of the lease to him was in fact paid by L. and wife, the original lessors.

Ostrander *v.* Livingston.

Where the consideration of an assignment is paid by one person and the assign-
ment is made to another, the whole legal and equitable title to the assigned prem-
ises is vested in the latter, except as to creditors of the former.

THIS was an appeal from a decree of the vice chancellor of
the first circuit, allowing a demurrer and dismissing the com-
plainant's bill, with costs.

In May, 1825, the defendants, Maturin Livingston and wife,
leased to William C. Holley a piece of land on the south side
of Stanton-street, between Suffolk and Clinton streets, in the
city of New-York, two hundred feet in width and three hundred
feet in depth; also three lots upon Rivington-street, each
twenty-one feet by one hundred, and seven lots between Stan-
ton and Rivington streets extending from Clinton to Attorney-
street, each being twenty-five feet by one hundred feet, for the
term of twenty-one years from the first of May in the year
1825, at a yearly rent of $2040, payable quarter-yearly. The
lease, among other things, contained the following covenant:
"It is mutually agreed by and between the parties to these
presents, for themselves and their representatives, that at the
end of the term hereby demised, the said premises and lots of
ground before mentioned and described, and the improvements
thereon, shall be separately valued and appraised, under the
oath of two reputable disinterested freeholders of the city of
New-York, to be appointed by the parties aforesaid, each party
choosing one of the said appraisers, and in case they cannot
agree, the said appraisers to choose a third, who shall also be a
freeholder of the said city and under oath in making the ap-
praisement aforesaid. And in case the said parties of the first
part, their heirs, executors, administrators or assigns, shall not
within ten days after the said appraisement, elect to take the
said improvements at the sum which the same shall be ap-
praised at, and pay the same to the said party of the second
part, his heirs, executors, administrators or assigns, then and in
such case the parties of the first part covenant and agree for
themselves, their heirs, executors, administrators and assigns,
to sell to the said party of the second part, his heirs, executors,
administrators or assigns, the said premises and lots hereby de

mised, at the price the same shall as aforesaid be appraised or valued at, and on the consideration money being paid, forthwith execute and deliver a good and sufficient deed of conveyance therefor, in fee simple."

Holley assigned this lease to Hinton and Moore, who afterwards assigned the same to The Sterling Company. In January, 1827, while that company were the owners of the lease, an agreement was made between them and Livingston and wife, the lessors, under their respective seals, and duly acknowledged and recorded. That agreement recited the making of the lease, and the substance of its provisions, and the assignments thereof, and that The Sterling Company, the assignees, were desirous of having the privilege of underletting or assigning parts of the premises so that the same should remain charged only with a just proportion of the rent reserved in the original lease, and that the lessors had assented to the same in the manner therein mentioned. Livingston and wife thereupon covenanted with The Sterling Company, and their successors and assigns, that in case that company, or their successors or assigns, should underlet or assign for a term or time not beyond the duration of the original lease, any lot or lots upon which no building had already been erected, such lots respectively to be twenty-five feet in front and one hundred in depth, and the under lessee or assignee of such lots respectively should actually build, or cause to be built, on each of the lots so assigned, a two story dwelling house or tenement, with a brick front, then and in such case each and every lot so underlet or assigned, and which should have such dwelling house or tenement erected thereon, should, while the same remained thereon, be chargeable with the annual rent of $60 only, payable in quarter-yearly payments, as its proportion of the rent reserved in the original lease, and with the taxes and assessments upon such lot ; and that upon the punctual payment to the original lessees, or their heirs or assigns, of such proportion of the rent, and keeping down the taxes and assessments, such lot should not be liable to forfeiture by re-entry or distress by reason of the non-payment of the residue of the rent reserved in the original lease, or the

Ostrander v. Livingston.

non-payment of taxes or assessments upon the residue of the premises; and that such under lessee or assignee of such lot, or his assigns, at the termination of the original lease, should, in respect to the improvements on such lot, be entitled to the like appraisement and provisions as were in that behalf specified in the original lease. The agreement then contained a provision that nothing therein contained should impair the right of the original lessors, or their heirs or assigns, to recover the whole rent from The Sterling Company, or their successors or assigns, and in case of non-payment thereof, or the breach of any other covenant in the release, to re-enter or to distrain upon all the residue of the demised premises in the same manner as if that agreement had not been made. And The Sterling Company covenanted and agreed for themselves, their successors and assigns, to pay the yearly rent reserved in the original lease and perform all the covenants therein contained on the part of the lessee.

The Sterling Company thereupon divided the parcel of land first described in the lease into twenty-four lots, 25 feet in front and rear, and 100 feet in depth; eight of which lots fronted on Stanton-street, eight on Suffolk-street, and eight on Clinton-street. In April, 1827, The Sterling Company leased two of those lots, fronting on Stanton-street, being the corner lot bounded upon Suffolk-street and the adjoining lot, on the east, by separate leases, to J. N. Brower, for nineteen years from the first of May then next, the whole residue of the term remaining of the original lease, at the yearly rent of $60 for each lot, payable quarterly to The Sterling Company or their assigns, but with liberty to the lessee to pay the rent to Livingston and wife, the original lessors, or their assigns; reserving the right to re-enter for the non-payment of rent, or for a breach of any of the covenants on the part of the lessee. And the lessee covenanted with The Sterling Company, and their successors and assigns, to pay the rent and the taxes and assessments, and to build upon the demised premises a house of at least two stories in height, with a brick front, and to surrender up the premises so underlet, to the lessors or their assigns, at the end of the

term.   The Sterling Company covenanted with the lessee for the quiet enjoyment of the premises; and to indemnify and save him harmless against any forfeiture, re-entry, or distress on account of any of the covenants, conditions, or agreements in the original lease from Livingston and wife, and that the lessee or his assigns at the end of the term should, in respect to the improvements on the lot so demised to him, be entitled to the like privileges, and upon the like appraisement and provisions, as were in that behalf specified in the original lease.   These leases to Brower also recited the giving of the original lease, and its provisions, and the subsequent agreement between the original lessors and The Sterling Company, as the assignees of that lease, the division of the first mentioned parcel of the premises into twenty-four lots, and that The Sterling Company had agreed to underlet the one of those lots described in the new leases respectively to Brower.

The Sterling Company also under-let divers other of the lots to different persons; but before the lots had all been under-let they reassigned the original lease and all their estate and interest in the demised premises, to Hinton and Moore; and by divers mesne assignments the same came to and was vested in W. Vernon.   Brower, the lessee of the two lots at the corner of Stanton and Suffolk streets, and fronting on the former, instead of building a two story house with a brick front on each lot, as he covenanted to do in his leases, divided the two lots into five, each being twenty feet wide on Suffolk street and extending east parallel to Stanton-street fifty feet.   Upon the corner lot of these subdivisions there was erected by Brower, or his assigns, a two story house with a brick front upon Suffolk-street, and extending back on Stanton-street 34 feet.   Frame buildings were erected upon three of the other lots of such subdivision, and a feed store of brick upon the fourth.   Brower died in 1828, and his executors assigned his leases for the two lots to Susan Brower, who in March, 1829, assigned them separately to I. Ostrander, the complainant in this cause.

Shortly before the termination of the original lease, Livingston and wife agreed with Vernon, the assignee thereof, to pay

him for the buildings upon the demised premises, and procured from him an assignment of all his interest in the lease and leasehold premises to one of their sons, M. Livingston, junior. Upon the expiration of the lease, Livingston and his wife claimed that the complainant was not entitled to pay for the buildings erected on these five subdivisions of the two lots, because they were not made in pursuance of the agreement with The Sterling Company, and with the covenants in the leases from that company to Brower; and refused to join in the appointment of appraisers of those two lots and the buildings thereon. They however offered to pay him what they considered the value of the buildings after deducting what they claimed as damages, because the buildings were not such as were contemplated in the agreement with The Sterling Company, and such as Brower in his leases covenanted to build.

Suits having been commenced against Ostrander and his tenants, to recover the possession of the two lots leased to Brower, the bill in this cause was filed to restrain the prosecution of those suits, and for a specific performance.

*J. M. Mason & B. F. Butler*, for the appellant. The complainant, on the case stated and the offers made in his bill, is entitled to the specific relief therein prayed for. He is assignee of the lessee in the original lease granted by the defendants to Holley, so far as relates to the two lots held by him as mentioned in the bill of complaint. As assignee of the lessee, for part of the demised premises, he has the same remedies upon the covenants contained in the original lease that an assignee of the lessee for the whole premises would have. The cove nant contained in the original lease with regard to the im provements, or the sale of the lots at the expiration of the lease, is divisible in its nature; and can be performed in regard to a portion of the demised premises as well as to the whole. The covenant is binding on the lessor, in favor of the assignee of the lessee for part of the land. The agreement between the lessors and The Sterling Company did not take away any of the rights of the subsequent assignees from the company.

Neither did the lease, and the acceptance thereof, from The Sterling Company, have that effect. In case the defendants refuse to appoint an appraiser of the improvements and lands, this court has the power to appoint an appraiser for them; or to have the improvements and lands valued under the direction of a master. The contract on the part of the lessee or his assigns having been performed by the payment of rent, and the buildings having been erected on the faith of the lessor's covenants in that behalf, the court will interfere to do justice between the parties, on the ground of part performance. If the court should refuse a specific performance of the covenant with regard to the improvements and the lands, the complainant is nevertheless entitled to compensation for the improvements, and the bill should be retained to ascertain his damages.

*G. Wood & A. Schell*, for the respondents. The complainant holds under a sub-lease executed by The Sterling Company under the agreement entered into between the company and the defendants, and not by assignment of the original lease. The covenants in the original lease in regard to buildings or improvements to be put upon the premises are not in reference to their subject matter inherent in or annexed to the premises as demised, and therefore are personal covenants not *per se* running with the land. But inasmuch as they appertain to the land, and relate to acts to be performed on the land, and are made expressly with the assigns, they are covenants with the assignees while they continue assignees, and in that respect run with the land. (*Spencer's case*, 5 *Coke's Rep*. 18. *Bally* v. *Wells*, 3 *Wils. Rep*. 25. *Gay* v. *Cuthbertson*, 2 *Chit. Rep*. 482.) Such covenants are allowable though the assignees as parties thereto, were not ascertained when the covenants were made, but arise in future; and covenants may shift in respect to the parties thereto, from time to time. (*Spencer's case*, 5 *Coke*, 18. *Willard* v. *Tillman*, 2 *Hill*, 276. *Norman* v. *Wells*, 17 *Wend*. 145, 159. *Fellows* v. *Gillman*, 4 *Id*. 414.) Such personal covenants are not *per se* divisible in respect

to the subject matter thereof. (9 *Cowen's Rep.* 753, 754. 7 *Id.* 313.)

There is nothing in the contract or subject matter of the original covenants in the lease to vary the construction in this respect and to render them partible. Because, (1.) Although the original lease and covenants contemplate the future erection of several buildings on several lots, yet they do not provide for such buildings being erected by different assignees of separate parts of the premises. (2.) The supplemental agreement which was designed to provide for that case, shows it was not contemplated in the original covenants. The covenants in the original lease, (if they are still in full force,) do not warrant the complainant in seeking the relief prayed for in the bill, the defendants being entitled under those covenants to one entire appraisement and performance.

The agreement between The Sterling Company and the defendants was mutual, and binding upon both parties, and the company therein covenanted on behalf of themselves and their assigns that all buildings that might be erected on said premises should be placed on lots 25 feet by 100, and be of the character therein described. (*Barton* v. *McLane*, 5 *Hill*, 256. *Masterton* v. *Smith*, 7 *Id.* 61.) That agreement, though personal and in a separate instrument from the lease, was made with the assigns also, and was binding upon them as a covenant shifting and applying to them when their interest as such assignees accrued, and the assignees so understood it; as is evinced by the recitals in the subleases. (*Willard* v. *Silliman*, 2 *Hill* 276. 8 *Cowen*, 206.) These covenants modified the covenants in the original lease, and either restricted or entirely superseded them so far forth as they were incompatible. The appeal should be dismissed with costs; the complainants, who violated their supplemental agreement in every particular, having no equity or law in their case.

THE CHANCELLOR. It is perfectly evident that no such building has been erected, upon either of the lots leased to Brower, as was contemplated in the agreement between the

Ostrander v. Livingston.

defendants and The Sterling Company, or as Brower cove
nanted to build on each of those lots.   True it was not required
that the two story dwelling house with a brick front should
cover the whole front of the lot of twenty-five feet in width.
But the erection of such a house as is described in the agree-
ment, if built partly on one lot and partly on the other, was
not a compliance with the terms of that agreement, or with the
covenants in the sub-leases, as to either of the lots.   The com-
plainant as the assignee of the interest of Brower, therefore,
was not entitled to any benefit whatever under the agreement
of January, 1827.   For the covenant in that agreement in
favor of the sub-lessees or assignees of particular lots, giving to
them the right to an independent appraisal in reference to their
improvements, was limited to such lots as should have been
improved by such sub-lessees, or assignees, or those claiming
under them, in the manner which was contemplated in that
agreement.

The rights of the complainant, therefore, in reference to im-
provements, are no greater than they would have been if the
agreement of January, 1827, had never been made.   And the
vice chancellor was right in supposing that under the covenant
in the original lease the value of the whole leasehold premises,
and the value of the whole of the improvements, were to be
separately estimated ; and that the lessors had the privilege of
taking all the buildings at such valuation, or of conveying the
whole of the premises demised, upon being paid the price at
which the whole premises exclusive of improvements were val-
ued ; at their election.   That covenant in the original lease,
therefore, was in its nature indivisible.   And if the entire inter-
est of the lessee in distinct parcels of the demised premises had
been assigned to different individuals, all who were interested
in the performance of the covenant, or in the different parcels
of the demised premises, must have united in the appraisal ;
and in the purchase of the whole premises, if the lessors elected
to convey the same at such appraisal.

This covenant, however, was so far modified, in favor of the
sub-lessees or assignees of particular lots who should comply

with the terms of the subsequent agreement, as to exempt the lots, underlet or assigned to them respectively, from this general appraisal. The effect of the subsequent agreement, therefore, was the same as if the particular lots which were leased or assigned, and built upon in conformity to the terms of the agreement, had formed no part of the premises originally demised to Holley. The bill shows that several other of the lots, of 25 feet by 100 feet, into which the first parcel of the demised premises was subdivided by The Sterling Company, were sublet to different persons. But who such persons were, whether any buildings were erected on their respective lots, and if so, whether they were erected in conformity to the provisions of the agreement of January, 1827, does not appear. No relief, therefore, could be granted upon this bill, even if the complainant had made out a case entitling him to equitable relief in other respects.

M. Livingston, jun., who is the legal assignee of a part at least of the premises originally demised, so far as relates to this covenant for appraisal, &c. appears to be a necessary party to any bill for a specific performance of that covenant by the lessors. It is true, the bill alleges that the consideration of Vernon's assignment of the lease to him was in fact paid by the lessors. But that did not prevent the vesting of all Vernon's interest under the lease in him, in equity as well as at law ; as there could be no resulting trust in favor of the original lessors, upon the facts disclosed. (*See* 1 *R. S.* 728, § 51.)

The decree of the vice chancellor allowing the demurrer, and dismissing the bill, must therefore be affirmed, with costs ; but it must be without prejudice to the rights of the complainant, if he has any, in any future litigation.