In the Matter of the Application of CHARLES B. ROGERS, Individually and as Surviving Trustee under the Last Will and Testament of ELIZABETH B. ROGERS, Deceased, and Others, Petitioners, for an Order of Certiorari against MARK GRAVES and Others, as and Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, June 22, 1938.

*Miller, Hubbell & Evans* [*Arthur L. Evans* of counsel], for the petitioners.

*John J. Bennett, Jr., Attorney-General* [*Joseph M. Mesnig, Assistant Attorney-General,* of counsel], for the respondents.

HEFFERNAN, J. This is a certiorari proceeding to review a final determination of the State Tax Commission assessing a mortgage tax, payable upon the recordation of a certain written instrument.

Since the institution of this proceeding Charles B. Rogers, one of the petitioners, died, and his executors have been substituted in his place.

The facts are not in dispute. Mr. Rogers and the late Mr. Justice DeAngelis were trustees under the will of Elizabeth B. Rogers, the former's mother. Mr. Rogers was president of the First National Bank of Utica, which institution was later named First National Bank and Trust Company of Utica and is now known as First Citizens Bank and Trust Company of Utica. In 1922 the bank desired to change its location. Apparently it had several locations under consideration. A site known as the Calder and Stewart properties was acceptable. In a proceeding for confirmation of the lease and agreement subsequently made the bank's president testified that while the bank approved this site it " considered the cost of the property too great for the erection thereon of such a building as it desired to put up if it was obliged to pay for the property immediately, but it was willing to lease the properties for a long term of years and erect its building thereon during the term providing it could purchase the land at the end of the term at its specified cost." The owners of these properties were unwilling to make such an arrangement. The trustees, however, according to the testimony of Mr. Rogers, considering " the situation as a favorable opportunity for securing an exceptionally safe and profitable long term investment," agreed with the bank that they would acquire the properties from the owners and lease them to the bank for ninety-nine years at an annual rental netting the trustees five per cent on the cost of the property, provided the bank would agree to erect a building of the value of at least $800,000, and would agree to purchase the land at its cost at the end of the term.

The trustees, as such, acquired title to the Calder and Stewart properties at a cost of $800,000 and made, what Rogers described as, a " lease and agreement for the sale of the leased premises " with the bank. The consideration therefor, as expressed in the instrument, is " the rents, covenants and agreements hereinafter mentioned, reserved and contained."

This instrument was executed on July 15, 1922, by the trustees and on behalf of the bank; pursuant thereto the properties were leased by the trustees to the bank for a term of ninety-nine years from July 15, 1922, at a yearly rent of five per cent upon the sum of $800,000, payable in quarterly installments. The bank agreed to construct a building on the land of the value of at least $800,000 and to pay all taxes, assessments, insurance, etc., and expressly stipulated the annual rental of $40,000 should be a net payment " with no deduction for taxes now imposed or which may be imposed by future legislation, Federal, State or municipal, during the life of this lease." Finally, the parties incorporated in the instrument a provision whereby the trustees bound themselves to sell, and the bank to buy, at the end of the term, all of the interest of the trustees in the premises for the sum of $800,000.

After the lease and agreement was confirmed the bank, evidently as part of its plan for the acquisition and development of the property, assigned it to the co-petitioner, First National Holding Corporation, which concern erected on the premises a fourteen-story building at a cost of at least $1,200,000, and sublet the first four floors of such building to the bank.

The instrument was recorded in the office of the clerk of the county of Oneida on September 5, 1922, without payment of a mortgage tax. The Tax Commission, after an examination of the mortgage tax records of Oneida county concluded, on April 26, 1937, that the instrument was taxable. Thereafter a hearing on the matter was duly held pursuant to notice and on July 7, 1937, the Commission made its final determination which is the subject of this review.

By such determination the Commission ruled that the instrument was subject to a mortgage tax as an executory contract of sale under which the vendee had or was entitled to possession pursuant to section 250 of the Tax Law; that the amount of tax due at the time of recordation was $4,000, which remained unpaid, and that, because of no bad faith or willful evasion of tax existed, penalties in excess of the statutory minimum should be remitted. The amount of tax and statutory penalties was paid under protest under date of July 30, 1937.

The petitioners urge that the instrument in question is separable into two distinct contracts; one, a ninety-nine-year lease under which alone the bank is in possession, and the other an executory contract of sale with no provision for present possession.

A mortgage is defined as an instrument " which imposes a lien on or affects the title to real property, notwithstanding that such property may form a part of the security for the debt or debts secured thereby." (Tax Law, § 250.) That section specifically provides that " Executory contracts for the sale of real property under which the vendee has or is entitled to possession shall be deemed to be mortgages for the purposes of this article and shall be taxable at the amount unpaid on such contracts."

The tax is imposed upon the mortgage, is computed upon the principal debt or obligation secured thereby (Tax Law, § 253), and is payable at the time of recordation of the instrument (Tax Law, § 257).

If the agreement in question is an executory contract for the sale of real property under which the vendee has or is entitled to possession then it is taxable; otherwise it is not. It seems to us that the important question for decision is the character of the instrument which the parties have executed. Is it entire or severable? This calls for a construction and interpretation of the " lease and agreement " in order to find the true intention of the parties as expressed therein. When this is ascertained we can then say whether the instrument is entire or severable, indivisible or divisible, and whether its different parts are independent or dependent. If all the provisions of the document are interdependent and give the whole agreement the character of oneness, in accord with the purpose and intention of the parties, no separation of its different parts into two contracts can be tolerated. No formula has been devised which furnishes a test for determining in all cases what contracts are severable and what are entire. The primary criterion for determining the question is the intention of the parties as determined by a fair construction of the terms and provisions of the contract itself, by the subject-matter to which it has reference, and by the circumstances of the particular transaction giving rise to the question. (12 Am. Jur., Contracts, § 315.) As a general rule, a contract is entire when, by its terms, nature and purpose, it contemplates that each and all of its parts are interdependent and common to one another and to the consideration, and is severable when in its nature and purpose it is susceptible of division and apportionment. (12 Am. Jur., Contracts, § 316.) As a general rule it may be said that a contract is entire when by its terms, nature and purpose it

contemplates and intends that each and all of its parts and the consideration shall be common each to the other and interdependent. On the other hand, it is the general rule that a severable contract is one which in its nature and purpose is susceptible of division and apportionment. (13 C. J. 561.) In *Ming* v. *Corbin* (142 N. Y. 334) it is said: " A contract is entire when the parties intend that the promise by one party is conditional upon entire performance of his part of the contract by the other party. The contract is said to be severable when the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item or is left to be implied by law." Where the entire fulfillment of the contract is contemplated by the parties as the basis of the arrangement, the contract is treated as indivisible. (*Hyde* v. *Booraem*, 16 Pet. 169.)

An option to purchase, being an integral part of a lease, is a substantial part of the whole contract, and is not obnoxious to the objection that there is a want of mutuality, and the agreement to pay rent or do other acts will support the option as well as the right to occupy under the lease, and bind the lessor notwithstanding the lessee is not bound to purchase. (35 C. J. 1038.)

A covenant in a lease that at the expiration of the term the lessor would pay for improvements, or that the lessee might purchase the premises at their appraised value, was held not divisible. (*Ostrander* v. *Livingston*, 3 Barb. Ch. 416.)

Disregarding the form of the agreement and looking solely to its substance the conclusion is inescapable that we have a single contract, with the provision for a lease and sale so intermingled and entwined as to be inseparable. The acquisition of title to the property by the bank is the essence of the contract. Its dominant thought was not the privilege of leasing the property but the right to own it. Its purpose was to acquire absolute ownership and control of the premises and not a mere permission to occupy it under a lease. There is nothing in the language of the statute which says that the vendee's possession must be possession purely and exclusively as vendee. Evidently the term " vendee " is used by the Legislature in the statute merely as a medium of nomenclature usually designating the " party of the second part " under a contract of sale. As was said by Judge POUND in *White* v. *Walsh* (62 Misc. 423), the principal object of the contract is to bind both parties to an ultimate sale. That is the situation here. The bank wished to acquire the property and would have concluded no arrangement which did not guarantee to it the ownership. The only reason for the arrangement in question was the necessity

of deferring payment for the land so that the bank might meanwhile improve the property by the erection of a building, which was done at a cost of $1,200,000. The trustees acquired the property at a cost of $800,000. The bank bound itself to purchase the premises at that figure. The annual rental is computed at five per cent upon the cost of the property. The identical result could have been accomplished had the trustees deeded the premises to the bank and taken back a purchase-money mortgage for $800,000 with interest at five per cent payable ninety-nine years from date. It seems to us that the specified rental amounts are very definitely, in part at least, a consideration supporting the contract of sale. The bank having improved the real property worth $800,000 with a building costing $1,200,000 would certainly not have agreed to pay the same amount of rent if the agreement did not provide, as it did, that the bank could acquire the land so improved at the agreed price of the land alone.

It cannot be doubted that the agreement constitutes an absolute contract of purchase and sale. The bank is obligated to buy the premises at a stated price and the trustees are obligated to sell at that figure. The contract does not permit the construction that the bank could at will defeat the purchase agreement merely by a failure to pay rent, nor a construction that the agreement to buy is in the nature of a conditional option. No such intention is manifested by any language in the agreement and a rational interpretation does not permit the conclusion that the parties so intended.

By an indivisible, inseparable instrument, the trustees placed the bank in possession and, by the same instrument, the trustees bound themselves to sell and the bank bound itself to purchase, at a future date. Under such an instrument, clearly, summary proceedings would not suffice to revest all title in the trustees, in the event of a default on the part of the bank. Precisely when the lessor-lessee relationship arose and ended and when the vendor-vendee relationship began does not seem to us to be particularly essential.

Petitioners urge that the case of *Stewart* v. *Long Island R. R. Co.* (102 N. Y. 601) is decisive of the question involved here. It is conceded that the question there decided is entirely different from the one presented here. It is true that there are some statements in the opinion which give color to petitioners' contention. A judicial opinion is authority only for what is actually decided. (*Rolfe* v. *Hewitt*, 227 N. Y. 486.) What the court did, and not what it said in doing it, is the thing of importance. The language used in an opinion should always be read in the light of the issues pre-

sented. The doctrine of *stare decisis* contemplates only such points as are actually involved and determined in a case and not what is said by the court on questions not necessarily involved therein.

We are clearly of the opinion that the contract before us is an indivisible one and properly taxable under the statute. The determination of respondents should be confirmed, with fifty dollars costs and disbursements.

HILL, P. J., RHODES and BLISS, JJ., concur; CRAPSER, J., dissents, with an opinion.

CRAPSER, J. (dissenting). This is a certiorari proceeding to review a final determination of the State Tax Commission assessing a mortgage tax, payable upon the recordation of a certain written instrument.

The State Tax Commission have held that a written instrument dated July 15, 1922, is taxable as a mortgage under article 11 of the Tax Law.

The instrument in question is a ninety-nine-year lease containing an agreement by the lessee to buy and by the lessor to sell the leased premises at the end of the ninety-nine-year term.

The question arises under section 250 of the Tax Law which provides in part as follows: " Executory contracts for the sale of real property under which the vendee has or is entitled to possession shall be deemed to be mortgages for the purposes of this article and shall be taxable at the amount unpaid on such contracts."

The sole question presented is whether the instrument in question was an executory contract for the sale of real property and whether the vendee was in possession thereunder.

Charles B. Rogers and P. C. J. DeAngelis, as trustees under the will of Elizabeth B. Rogers, deceased, leased certain premises in the city of Utica, N. Y., to the First National Bank of Utica (later First National Bank and Trust Company of Utica, now First Citizens Bank and Trust Company of Utica) for a term of ninety-nine years from July 15, 1922, and the lessee agreed to pay the net yearly rent of $40,000 for the use of said premises.

Among other clauses said instrument contains the following clause: " Said party of the second part further covenants and agrees that at the end of the term of this lease it will purchase from the parties of the first part, their successors or assigns, all their interest in the premises at the sum of eight hundred thousand dollars ($800,000) in gold coin of the United States of America of or equal to the present standard of weight and fineness or its equivalent, and said parties of the first part covenant and agree for themselves, their successors and assigns, that they will sell

and convey their said interest to the party of the second part for said sum of eight hundred thousand dollars ($800,000) in such coin or its equivalent."

The lessee bank and its successors entered into possession under the lease on July 15, 1922, and remained there until March 2, 1925, when it assigned the said instrument to the First National Holding Corporation which has since been in possession of the said property under the lease.

The bank was seeking a new site for a new building and among the other sites that it was considering was the leased premises which was made up of two properties but it considered the cost of the property too great for the erection thereon of such a building as the bank desired to put up, if it was obliged to pay for the property immediately, but it was willing to lease the properties for a long term of years and to erect its building thereon during the term providing it could purchase the land at the end of the term at a specified cost.

As the result the property was purchased by Charles B. Rogers and Judge DeAngelis as trustees under the last will and testament of Elizabeth B. Rogers, deceased, and the lease in question was entered into with the bank.

The lease in question was assigned to the First National Holding Corporation on March 2, 1925, and recorded in the Oneida county clerk's office March 17, 1925, and on March 2, 1925, the First National Holding Corporation, as mortgagor, mortgaged it to the Oneida County Trust Company, as trustee and mortgagee, the said lease to secure the issuance of $1,000,000 first mortgage leasehold five and one-half per cent gold bonds due from 1930 to 1965.

The description covered all the company's right, title and interest as tenant in the indenture of lease dated the 15th day of July, 1922, and recorded the 5th day of September, 1922, which is the instrument in question herein.

The holding corporation undertook the erection of a fourteen-story bank and office building on the leased premises at a cost of $1,200,000 and sublet the first four floors of the building to the bank until September 1, 1965. This together with the other rentals received from the building was sufficient to pay the principal and interest on the bonds and the sublease was assigned to the trust company as security for the bondholders.

The original lease was recorded in the Oneida county clerk's office on September 5, 1922. No mortgage tax was demanded or paid at the time and it was not until the year 1934 that the question of a mortgage tax was raised by the State Tax Commission.

The bank went into possession of the leased property under

the lease as lessee and not as vendee. One of the purposes of the agreement was to lease the property and to postpone its purchase for ninety-nine years.

The testimony taken in the case shows that it was the bank's desire to lease the property for a long term of years provided that it could arrange to purchase it at the end of the lease for a specified cost. It was agreed that there was no attempt being made by the parties to this transaction to evade any tax.

The language of the instrument itself is so clear that no construction is necessary. The bank went into possession as lessee and not as vendee, it transferred its interest as lessee to the holding corporation which mortgaged its leasehold interest to secure the necessary funds with which to build a building on the property leased. There was no provision in the lease by which if a default was made by the lessee the lessor could advance the date of purchase or by which the lessee could advance the date of purchase. The date of purchase was fixed at the end of the lease, ninety-nine years, and, therefore, *White* v. *Walsh* (62 Misc. 423), relied upon by the respondents, is clearly distinguishable and is not an authority that will support the action taken by the State Tax Commission herein.

For ninety-nine years this was a strict, straight lease, under which the lessee and its successors in interest had the right to occupy the property upon complying with the terms; at the end of that time, it had the right to purchase the property for the sum of $800,000. To hold otherwise would be to do violence to the plain language set forth in the lease and the assignment and the mortgage given by the holding corporation. In my mind the matter is not open to debate. The lessee became entitled to possession under the instrument as lessee and not as vendee.

The length of time that the lease stood recorded in the county clerk's office of Oneida county without being questioned is of itself convincing proof that the attempt to treat it as an executory contract of sale of real property under which the vendee has or is entitled to possession is an afterthought on the part of the Tax Commission which cannot be sustained upon the facts presented by the record.

The order and determination of the State Tax Commission should be reversed, with fifty dollars costs and disbursements.

Determination confirmed, with fifty dollars costs and disbursements.