In re Theodore Augest PRAKOPE, Debtor

Richard E. O'Connell, as Trustee for the Chapter 7 Estate of Theodore Augest Prakope, Plaintiff,

v.

Jane Prakope, Defendant.

Bankruptcy No. 04–14587–CEC.
Adversary No. 04–1408.

United States Bankruptcy Court, E.D. New York.

Dec. 2, 2004.

---

Leslie S. Barr, Brauner, Baron, Rosenzweig & Klein, LLP, New York, for Chapter 7 Trustee.

Wayne M. Greenwald, Law Offices of Wayne M. Greenwald, New York, Counsel for the Proposed Intervenors.

Jane Prakope, Neponsit, NY, Pro se.

Theodore Augest Prakope, Neponsit, NY, Pro se.

## DECISION

CARLA E. CRAIG, Bankruptcy Judge.

This matter comes before the Court on the Trustee's motion for summary judgment in this action to sell property owned by the entireties by the debtor, Theodore Prakope ("Debtor"), and his wife, Jane Prakope ("Mrs. Prakope"), under § 363(h)

of the Bankruptcy Code. Also before the Court is the motion of Bernice and Robert Luhrs, parties to a prepetition contract with the Prakopes to purchase the property in question, to intervene in this adversary proceeding under Fed.R.Civ.P. 24.

### Jurisdiction

This Court has jurisdiction over this core proceeding under 28 U.S.C. §§ 1334(b) and 157(b)(2)(J) and the Eastern District of New York standing order of reference dated August 28, 1986. This Decision constitutes the Court's findings of fact and conclusions of law to the extent required by Fed. R. Bankr.P. 7052.

### Facts

The following relevant facts are not in dispute. Theodore Prakope filed this voluntary Chapter 7 case on April 1, 2004. This is Mr. Prakope's third bankruptcy filing in as many years. His most recent bankruptcy case, which was commenced under Chapter 11 of the Bankruptcy Code in June 2003, was dismissed in January 2004 with prejudice to re-filing under Chapter 11 for 1 year. In addition, Jane Prakope filed a Chapter 7 case on November 16, 2000, and received a discharge on March 9, 2001 (Case No. 00–22195–JF).

The Debtor and Mrs. Prakope are owners by the entireties of a house at 200 Beach 145th Street, Neponsit, New York (the "Property"). The Property is encumbered by a first mortgage in the approximate amount of $970,000, by two subordinate mortgages held by the United States Small Business Administration ("SBA") in the approximate amount of $540,000, and by a judgment and other liens aggregating approximately $386,000.

Three days before the commencement of this Chapter 7 case, the Prakopes entered into a Residential Contract of Sale with

the Luhrs to sell the Property to them for $970,000 (the "Contract"). The Contract was not assumed by the Trustee in this bankruptcy case pursuant to § 365 of the Bankruptcy Code, and there has been no extension of time within which to assume it, nor any motion made for such an extension. Accordingly, the contract has been rejected by operation of law pursuant to § 365(d)(1) of the Bankruptcy Code.

Schedule A to the Debtor's Chapter 7 petition states that, as of the commencement of this case, the Property had a fair market value of $1,000,000. In connection with this summary judgment motion, the Trustee submitted the affidavit of David R. Maltz, the auctioneer retained by the Trustee to sell the Property, in which Mr. Maltz concluded that the present fair market value of the Property is between $1,200,000 and $1,400,000. Although the value of the Property has not been determined, it seems likely, given the amounts of the various liens, that there is no equity in the Property. Nevertheless, the SBA, wishing to have the Property sold in this bankruptcy case, agreed to carve out from its second priority lien the Trustee's reasonable and necessary costs and expenses of disposing of the Property, in a sum equal to statutory trustee commissions, auctioneer commissions and expenses, and attorneys fees and expenses, currently estimated to aggregate approximately $112,500. The Trustee stated that, from this carve out by the SBA, there may be a small distribution to unsecured creditors.

The Trustee has entered into a contract to sell the Property for $1,200,000, approximately $230,000 in excess of the amount of the first mortgage, which will be submitted for court approval subject to higher and better offers, if the Trustee obtains authority to sell the Property pursuant to § 363(h).

On July 29, 2004, the Trustee commenced this adversary proceeding against Mrs. Prakope under § 363(h) of the Bankruptcy Code, seeking authority to sell the Property free and clear of her interest. The Trustee has moved for summary judgment on the basis that there is no genuine material factual issue that each of the requirements of § 363(h) have been met. Although Mrs. Prakope did not submit any written opposition to the Trustee's summary judgment motion, she made oral argument on her own behalf at the hearing.

The Luhrs have made a motion to intervene in this proceeding, asserting that the Contract gives them an interest sufficient to intervene as a matter of right pursuant to Fed.R.Civ.P. 24(a)(2), made applicable to these hearings by Fed. R. of Bankr.P. 7024. In the alternative, the Luhrs ask permission to intervene pursuant to Fed. R.Civ.P. 24(b).

## *Discussion*

### *Intervention by the Luhrs*

Federal Rule of Civil Procedures 24(a)(2) states:

(a) *Intervention of Right.* Upon timely application anyone shall be permitted to intervene in an action...

(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a)(2).

The applicant bears the burden of establishing the right to intervene. *United States v. Texas Eastern Transmission Corp.*, 923 F.2d 410, 414 (5th Cir. 1991). Failure to satisfy one of the crite-

ria of Rule 24(a)(2) justifies denial of the application to intervene. *New York News, Inc. v. Kheel,* 972 F.2d 482, 485–486 (2d Cir.1992). In considering whether to grant intervention, courts do not evaluate the ultimate merits of the claim the intervenor seeks to assert, unless the allegations are frivolous on their face. *Turn Key Gaming, Inc. v. Oglala Sioux Tribe,* 164 F.3d 1080, 1081 (8th Cir.1999).

 An applicant must demonstrate "an interest relating to the property or transaction which is the subject matter of the action" in which the applicant seeks to intervene. Fed.R.Civ.P. 24(a)(2). What constitutes such an interest is narrowly construed. *Donaldson v. United States,* 400 U.S. 517, 530–531, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). To invoke a right to intervene, an applicant's interest must be "direct, substantial, and legally protectable." *Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.,* 922 F.2d 92, 97 (2nd Cir.1990). An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule. *Id.; see also SEC v. Flight Transp. Corp.,* 699 F.2d 943, 948 (8th Cir.1983) *cert. denied, Lund v. Norwest Bank Minneapolis,* 485 U.S. 936, 108 S.Ct. 1113, 99 L.Ed.2d 273 (holding an intervenor cannot rely on an interest which is wholly remote and speculative); *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.,* 782 F.Supp. 870, 874 (S.D.N.Y.1991) (holding an intervenor's interest must be "significantly protectable such that it will be directly and immediately affected by the litigation").

The Luhrs initially argued that they have the right to intervene under Fed. R.Civ.P. 24(a)(2) because their prepetition contract to purchase the Property from the Prakopes gives them an immediate,

protectable interest in the subject of this adversary proceeding. This argument ignores the fact that the Contract has been rejected and the Luhrs therefore are relegated to the position of unsecured creditors, with a claim for damages against the estate. 11 U.S.C. § 365(g); *see also Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d 98 (2nd Cir.1986); *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.,* 83 F.3d 735, 739 (5th Cir.1996). The Luhrs alternatively argued that they have an interest in the Property because they wish to enforce the Contract against Mrs. Prakope separately. The problem with this argument is that separate enforcement of the Contract against Mrs. Prakope is not possible under the terms of the Contract, or as a matter of real estate law, because the Property is owned by the entireties.

 The Luhrs's motion to intervene as of right fails under bankruptcy and contract law. Analysis of this issue starts with the Contract itself.

### The Sale Contract Is not Severable.

 The Luhrs argue that the rejection of the Contract does not affect Mrs. Prakope's obligations, which they assert, survive until the sale of the Property. The Luhrs claim that their interest in this proceeding derives from their right to enforce the Contract against Mrs. Prakope. In order for the Luhrs's argument to prevail they must demonstrate that the Contract is severable, and could be performed by Mrs. Prakope separately.

 A severable contract "includes two or more promises which can be acted on separately such that the failure to perform one does not necessarily put the promisor in breach of the entire agreement." 83 F.3d 735, 739 *quoting Black's Law Dictionary* 1373–74 (6th Ed.1990).

There is no formulaic test for determining whether a contract is severable or entire. *Id. See Unisys Corp. v. Combined Technologies Corp.,* No. 87 Civ. 1449, 1988 WL 78148, at *2 (July 19, 1988 S.D.N.Y.). In making such a determination, "the primary factor to consider is the intent of the parties as determined by a fair construction of the terms and provisions of the contract itself, by the subject matter to which it has reference, and by the circumstances existing at the time of contracting." *Municipal Capital Appreciation Partners I, L.P. v. Page,* 181 F.Supp.2d 379, 394 (S.D.N.Y. 2002), *citing Nederlandse, Etc. v. Grand Pre–Stressed Corp.,* 466 F.Supp. 846, 852 (E.D.N.Y.), *aff'd* 614 F.2d 1289 (2d Cir. 1979); *Rudman v. Cowles Comm., Inc.,* 30 N.Y.2d 1, 14, 330 N.Y.S.2d 33, 42, 280 N.E.2d 867 (1972); *Rogers v. Graves,* 254 A.D. 467, 5 N.Y.S.2d 967, 971 (3d Dep't 1938).

 A contract is entire when, "by its terms and purposes, it contemplates that all of its parts are interdependent and common to one another." *Municipal Capital Appreciation Partners I, L.P. v. Page,* 181 F.Supp.2d at 394. A contract is severable when "its nature and purpose are susceptible to division and apportionment." *Id.* Under New York law, "a contract will not be regarded as severable unless (1) the parties' performances can be apportioned into corresponding pairs of partial performances, and (2) the parts of each pair can be treated as agreed equivalents." *Id. citing Ginett v. Computer Task Group, Inc.,* 962 F.2d 1085, 1091 (2d Cir.1992); *see also Restatement (Second) of Contracts § 240.*

Examination of the terms, subject matter and circumstances surrounding the Contract conclusively shows that this agreement is not severable. The "Seller" under the Contract is defined as both Theodore *and* Jane Prakope, collectively.

This is necessary because they own the Property by the entireties, and therefore neither could convey fee title to it separately. *See Hiles v. Fisher,* 144 N.Y. 306, 39 N.E. 337 (1895); *Ripp v. Ripp,* 38 A.D.2d 65, 327 N.Y.S.2d 465 (2d Dept. 1971). Because the Contract has been rejected, it cannot be specifically enforced against the Trustee. Because Mrs. Prakope has no severable obligations to the Luhrs under the Contract, it cannot be enforced against her.

At the hearing, the Luhrs's attorney argued that the Luhrs nevertheless have a right to intervene because of their potential ability to enforce the Contract against Mrs. Prakope in the event title to the Property were to vest entirely in her (if, for example, she purchased the Property pursuant to § 363(i), or if Mr. Prakope were to die prior to the sale of the Property). However, there is no indication whatsoever that Mrs. Prakope has the means or the desire to purchase the Property pursuant to § 363(i), nor any reason to think that she will become the sole owner of the Property by any other means. Such a remote and speculative claim cannot be the basis for intervention. *See SEC v. Flight Transportation Corp.,* 699 F.2d at 948.

The Trustee, whose job is to maximize the value of the estate to obtain the largest possible distribution to creditors, adequately represents the only interest that the Luhrs have, their unsecured claim for damages. *See In re Thompson,* 965 F.2d 1136, 1142 (1st Cir.1992); *Heyman v. Exchange National Bank,* 615 F.2d 1190, 1194 (7th Cir.1980).

 The Luhrs's application for permissive intervention is likewise denied. Federal Rule of Civil Procedure 24(b), incorporated by Federal Rule of Bankruptcy Procedure No. 7024, states:

(b) Upon timely application anyone shall by permitted to intervene in an action...(2) when an applicant's claim or defense and the main action have a question of law or fact in common.

The Luhrs have not asserted any claim or defense that has a question of law or fact in common with the issues raised by the Trustee's action against Mrs. Prakope. The issue in this adversary proceeding is whether the Trustee should be authorized to sell the Property pursuant to § 363(h). The Luhrs have no claim in this case, other than an unsecured claim for rejection damages pursuant to § 365(g). If there is any question concerning the validity of that claim, it is legally and factually unrelated to the issues raised by this adversary proceeding.

The Luhrs contend that they should be permitted to argue in this proceeding that the detriment to Mrs. Prakope from selling the Property outweighs the benefit to the estate under § 363(h)(3) because the Luhrs "intend to seek all relief to which they may be entitled" against Mrs. Prakope in the event that they do not receive the property pursuant to the Contract. In other words, the Luhrs assert that the detriment to Mrs. Prakope of the litigation that they are threatening outweighs the benefit the estate will receive from the sale of the Property.

Putting aside, for the moment, the Luhrs's lack of standing to assert this defense on Mrs. Prakope's behalf, this argument is patently devoid of merit. The Luhrs's threats of litigation are empty because the Contract contains an escape clause in the event that the seller is unable to transfer title. Paragraph 21(b) of the Contract provides:

If at the date of the Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects")...and if Purchaser shall be unwilling to waive the same and close without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right...to cancel this contract;

Neither the Prakopes, collectively, nor Mrs. Prakope, individually, can transfer title because the Debtor's interest in the Property is now held by the Trustee, who has rejected the Contract. The Luhrs's only remedy would be to cancel the Contract or to waive the defect and close without abatement of the purchase price (i.e., to tender the full purchase price to Mrs. Prakope for her interest in the Property).

The Luhrs point to *In re Lopez–Soto*, 764 F.2d 23 (1st Cir.1985) to support their assertion that, as real property vendees, they may intervene in a bankruptcy proceeding because they hold an interest in the property that will be affected by the outcome of this proceeding. *Lopez–Soto* is inapposite to this case because the interest of the purchaser in that case is fundamentally different from the Luhrs's interest in this case. The *Lopez–Soto* contract vendees had an enforceable binding executory purchase and sale agreement with the vendor/debtors. The purchase and sale agreement in *In re Lopez–Soto* was not rejected, as is the Contract in this case.

Moreover, the *Lopez–Soto* contract vendees occupied the subject property, had paid a portion of the purchase price to the contract vendor/debtors, had made improvements to the property, and had apparently made payments on the existing mortgage. As explained by the First Circuit, "[h]ere, the [purchasers'] *tenancy* under an *executory*, unrecorded purchase and sale agreement gives them a *legal*

*right to remain in the house* good against most of the world. This would seem an adequate 'interest in the property.'" *In re Lopez–Soto,* 764 F.2d at 27 (emphasis added). None of these facts are present in this case. The Contract is rejected and no longer executory. The Luhrs admit that they have no possessory interest in the Property and that they did not make any improvements to the Property. The rationale that permitted the contract vendee to intervene in the *Lopez–Soto* case is inapplicable here.

It should be noted that the Bankruptcy Code provides a remedy akin to specific performance for contract vendees in possession, which is not available to the Luhrs. Bankruptcy Code § 365(i) addresses the limited and particular instance where a purchase and sale contract is rejected by the trustee while the non-debtor purchaser is in possession of the property. Under § 365(i), the purchaser in possession has the option to treat the rejected contract as terminated, or to remain in possession and to pay the contract price and receive title. The Luhrs seek intervention to accomplish that very result—to pay the purchase price and receive title to the Property, although they are not entitled to that relief under § 365(i) because they are not in possession of the Property. The Luhrs would thereby avoid the provisions of §§ 365(g) and 502(c)(1) that relegate them to an unsecured claim rather than a § 365(i) remedy.

For all of these reasons, the Luhrs's request to intervene in this adversary proceeding is denied.

### Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Bankr.P. 7056(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505.

In making this determination, the court is required to view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). After a movant makes a properly supported summary judgment motion, the nonmovant has the burden of setting forth specific facts showing the existence of a genuine issue of fact for trial. The nonmovant may not rely on the allegations or denials in its pleadings to establish a genuine issue of fact, but must come forward with an affirmative showing of evidence. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. 2505.

When no rational trier of fact could find in favor of the non-moving party because the evidence to support its case is so slight, there is no genuine issue of material fact requiring a trial and a grant of summary judgment is proper. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 280, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

Section 363(h) of the Bankruptcy Code permits the sale of property of the estate, under section 363(b), along with the interest of a co-owner of the property if, at

the time of the commencement of the case, the debtor held an undivided interest in the property as a tenant in common, joint tenant or tenant by the entirety, and if the following requirements are met:

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of the co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light or power.

11 U.S.C. § 363(h).

The burden of proving compliance with each of the four statutory conditions for a Section 363(h) sale rests with the Trustee. *Sapir v. Sartorius*, 230 B.R. 650 (S.D.N.Y.1999), *citing In re Gauthreaux*, 206 B.R. 502, 505–506 (Bankr.N.D.Ill. 1997); *In re Gillissie*, 215 B.R. 370, 380 (Bankr.N.D.Ill.1997); *In re Levenhar*, 30 B.R. 976, 981 (Bankr.E.D.N.Y.1983).

Once the trustee makes out his prima facie case demonstrating that the estate would benefit from the sale of the residence, the burden shifts to the defendant to present testimonial or other evidence of detriment to the non-debtor spouse, or to rebut the Trustee's evidence of the value if necessary. *Sapir v. Sartorius*, 230 B.R. at 656 *citing In re Grabowski*, 137 B.R. 1, 3 (S.D.N.Y.1992) *aff'd without opinion*, 970 F.2d 896 (2d Cir. 1992).

Here, the Property is a single family home held by the entireties, and it is undisputed that partition of the property would prove impracticable. *See In re Addario*, 53 B.R. 335, 338 (Bankr.D.Mass. 1985); *Sapir v. Sartorius*, 230 B.R. at 656.

It is likewise undisputed that sale of the estate's undivided 50% interest in the Property alone would realize significantly less than a sale of the Property together with Mrs. Prakope's interest. *Id., see also Gazes v. Roswick (In re Roswick)*, 231 B.R. 843 (Bankr.S.D.N.Y.1999); *Bakst v. Griffin (In re Griffin)*, 123 B.R. 933, 935 (Bankr.S.D.Fla.1991); *In re Vassilowitch*, 72 B.R. 803 (Bankr.D.Mass.1987).

The third requirement is that the benefit to the estate of the sale of the Property free of the interest of Mrs. Prakope must outweigh the detriment, if any, to Mrs. Prakope of such a sale. In this circuit, courts consider both economic and non-economic factors in determining the detriment to the non-debtor spouse. *Community National Bank and Trust Co. of New York v. Persky (In re Persky)*, 893 F.2d 15, 21 (2d Cir.1989). The Trustee asserts that Mrs. Prakope's evident willingness to sell the Property, as shown by the fact that she executed the Contract to sell it shortly before this bankruptcy case was commenced, conclusively establishes that there can be no hardship to her as a result of the sale by the Trustee for a much higher amount, and therefore that the requirements of § 363(h)(3) are met. It is incumbent, therefore, for Mrs. Prakope to come forward with any evidence of the detriment to her that might result from the sale of the Property. *Sapir v. Sartorius*, 230 B.R. at 656.

Mrs. Prakope did not file any written opposition to the Trustee's motion for summary judgment. At the hearing she stated that she would prefer that the Property be sold to the Luhrs because they have orally

agreed to permit her to remain in the house for a few months after the closing date. It is questionable whether this alleged oral agreement is enforceable; it does not appear to be for a definite term. Further, given that any such agreement to allow the Prakopes to remain in the house after the closing would presumably constitute a portion of the consideration to be paid by the Luhrs for the Property, the parol evidence rule would prevent the Prakopes from introducing testimony concerning its existence. 3–5 Warren's Weed New York Real Property § 24.01.

Moreover, the benefit to Mrs. Prakope of a sale to the Luhrs, even if they honor their oral agreement, is slight indeed, if it exists at all. As a practical matter, sale by the Trustee would not take place immediately in any event. A minimum of twenty days notice of the sale is required (*see* Fed. R. Bankr.P.2002(a)(2)), and it is likely given the value of this asset that a longer notice period would be required so that the Trustee can properly advertise the sale and market the Property. Nor is it likely that the closing would occur immediately after the sale of the Property. During this period, from the time this motion for permission to sell the Property is granted, to the closing of a sale by the Trustee (which is likely to be at least 60 days) Mrs. Prakope will remain in possession of the Property.

On the other hand, the sale of the Property by the Trustee will result in payment of administrative costs and may result in a small distribution to unsecured creditors of the estate. A sale is therefore a benefit to the estate. *See In re Gillissie*, 215 B.R. 370, 380 (Bankr.N.D.Ill.1997) (holding payment to creditors of a dividend from the sale of property is a benefit to the estate); *In re Ivey*, 10 B.R. 230, 232–33 (Bankr. N.D.Ga.1981).

The benefit to Mrs. Prakope of the possibility that the Luhrs may allow her to remain in the Property for a few more months does not outweigh the benefit to the estate and its creditors from the sale of the Property. The requirements of § 363(h)(3), therefore, have been met.

For all of the foregoing reasons, there is no material fact to be tried, and summary judgment should be entered permitting the Trustee to sell the Property pursuant to section 363(h) of the Code.

Plaintiff is directed to settle an order and a judgment consistent with this opinion.